STATE OF CONNECTICUT, UPON THE RELATION OF NELSON W. COE, *vs.* ORSAMUS R. FYLER.

Where property of a tax-payer has been legally assessed for taxation the town has no power to release him from a portion of his tax, he being of ability to pay.

After the assessors have completed their valuation of property, their work is subject to review and correction by the board of relief, and by them only.

Upon an application for a mandamus to compel a tax-collector to collect a tax, it is not necessary that the public prosecutor should proceed alone. He may act upon the relation of a citizen and tax-payer. The relator in such a case has an interest as a citizen in having all public officers discharge their official duty, and as a tax-payer he has a direct pecuniary interest.

It is not a reason against granting a mandamus that there is a remedy at law against the collector on his bond and by execution against his body and estate. Such proceedings may be fruitless, and as a remedy neither would be adequate; besides which the collector should not be heard to suggest that he might be punished for the non-performance of his duty.

APPLICATION for a mandamus, to compel the respondent, a tax-collector of the town of Torrington, to collect a tax laid upon the property of The Coe Brass Manufacturing Company, a corporation located in that town; brought to the Superior Court in Litchfield County by the State's Attorney upon the relation of Nelson W. Coe, a resident and tax-payer of the town.

The application set forth the corporate character of the company mentioned, its ownership of property in the town, VOL. XLVIII.—19

the assessment of the property by the assessors, the increase in the valuation of it by the board of relief, the names of the officers empowered to act and who did act in the matter, the laying of the tax by the town, the official character of the respondent as tax-collector, and the collection by him of a part of the tax and his refusal to collect the balance; and prayed that the respondent be commanded to proceed to collect the whole of the tax, or show cause to the contrary.

The respondent made the following return:

That though true it is that the relator is a resident of said Torrington and the owner of property liable to taxation on which he is assessed and pays taxes therein, and that there are many others who are the owners of property and taxpayers thereon in said town, and that among them the Coe Brass Manufacturing Company has its place of business and exercises its corporate powers in said town, and is the owner of property liable to taxation therein; and that, at the annual town meeting of said town, held on the first Monday of October, 1875, the officers named in said motion were duly elected and qualified; and that said town then passed certain votes, and appointed the respondent collector of the tax then laid, and that the assessors then chosen attended to the duties of their appointment as required by law, all as more fully set forth in the motion of said relator; and though true it is, that an assessment list and valuation of property claimed to belong to said Coe Brass Manufacturing Company, and claimed to be liable to taxation, was set in the grand list of taxable property in said town at the sum and value of $225,000, as stated in said motion, and that said selectmen made out and signed a rate-bill containing the property which it was claimed according to such list the tax-payers in said town were to pay, and which was placed in the hands of the respondent, with a warrant annexed thereto, as stated in said motion, and that the respondent accepted said office of collector and received said rate-bill as in said motion stated, and has collected the amount of said rate-bill with the exception hereinafter stated: Yet, for cause of omission to collect the whole of said rate-bill,

or any more thereof than he has already collected, accounted for and paid over, he assigns the following reasons : That on the 18th day of October, 1875, the said Coe Brass Manufacturing Company made and delivered to said assessors a true statement of all its property liable to taxation in said town of Torrington, in which list was embraced " two mills," valued by the owner, and also by the assessors at the sum of $50,000.    And there was also embraced in said list " investments in mechanical and manufacturing operations—$75,-000 ;" which said list was by the president of said company duly sworn to according to law.    And on consultation with said assessors it was agreed between them and said company, that the value of said " investment in mechanical and manufacturing operations" was, and should be put into said list at, the sum of $100,000, amounting in the whole, with the other property of said company as finally adjusted by said assessors, to the sum of $164,150, which list was accepted by said assessors as a true statement of all of said company's property liable to taxation in said town, and said assessors made up the grand list of said town accordingly. That a meeting of the board of relief of said town was duly called to be held on the first Monday of January, 1876, at which only two of the members thereof, they being a majority of said board, were present, namely, N. W. Coe and F. P. Whiting, who, as such board of relief, on the 3d day of January, 1876, being the first Monday of January, issued a notice, of which the following is a copy, viz : "Wolcottville, Jan. 3, 1876, Coe Brass Co.: Gentlemen—The board of relief for Torrington, in equalization of taxes, propose to raise the real estate and amount invested in business of your company, $60,850."

That Lyman W. Coe, the president of said company, appeared before said N. W. Coe and F. P. Whiting, as such board of relief, and claimed that said sum ought not to be added to said list, and especially that the value of the mills named in said list did not exceed the sum of $50,000, and that the amount invested by said company in mechanical and manufacturing operations liable to be assessed in said

town did not exceed $100,000, and that the addition of said amount would be unjust, excessive, inequitable and unlawful. But that, notwithstanding the protest, the said N. W. Coe and the said Whiting, as such board, did increase said valuation of said mills by the sum of $20,000, and did also increase the valuation of said "investment in mechanical and manufacturing operations" by the sum of $40,850, whereby the list of said company was increased to the sum of $225,000, and was so included in the grand list of said town for that year. And thereupon a rate-bill was made out against said company in which its tax was stated to amount to, and was set at the sum of $3,375, instead of the sum of $2,462.25, as it should have been, and as it would have been but for said additions so made as hereinbefore set forth.

And the respondent says that, as such collector, he received said rate-bill, and proceeded to the collection thereof, and that said company did pay to said collector, on its said tax, the sum of $2,462.25, leaving, after said payment, apparently due on the rate-bill the sum of $912.75, which last mentioned sum said company refused to pay as having been unfairly, unjustly and unlawfully assessed upon them.

And the respondent further says, that upon consultation with the selectmen of said town, he, upon their advice, in view of the claims made by said company and of the facts above stated, delayed to collect said tax. And that afterwards, on the 28th day of May, 1877, a warning for a special town meeting of said town to be held on the 2d day of June, 1877, was duly given by said selectmen, which warning contained, among other notices of the purpose for which the meeting was called, the following: "Also, to take such action as may be deemed advisable with reference to the collection or reduction and abatement of the tax against the Coe Brass Manufacturing Company of said town in the tax list of the town for the year 1875."

That on said 2d day of June, 1877, said meeting was duly held, and said subject of the collection or reduction and abatement of said tax was fully discussed and considered,

and during said discussion said Coe Brass Manufacturing Company claimed that the said additions to their list hereinbefore stated were inequitable, excessive, unjust and unlawful; and upon due consideration it was thereupon voted unanimously, with the exception of the solitary vote of the relator, " that the tax assessed and laid against the Coe Brass Manufacturing Company of this town on the tax list of the town for the year 1875, be so abated and reduced that said company be required by the town to pay taxes on said list on the sum of $164,150, amounting to a tax of $2,462.25, and no more; provided that the selectmen of the town become satisfied, upon investigation, that such abatement and reduction can legally be made by the town."

That afterwards, on the 27th day of September, 1877, the selectmen of said town having investigated the question of the legality of said vote in relation to the abatement and reduction of the tax list of the Coe Brass Manufacturing Company on said tax list, and having become satisfied, upon the advice of counsel, of the legality of such reduction and abatement, did make a settlement with said company on said tax list by deducting from said tax the sum of $912.75 with interest, of all which the treasurer of said town and the respondent had notice. And that after the aforesaid action of said town and of said selectmen, on the said 27th day of September, 1877, the treasurer of said town balanced said rate-bill on the tax list of 1875, which was in the respondent's hands as said collector, and credited thereon in making said balance said sum of $912.75 and interest so abated from the list of said company, thereby leaving said rate-bill fully collected, and your respondent's duties in respect to the same as said collector completed and at an end; and that said treasurer then gave credit to your respondent as said collector on the books of said town for said sum of $912.75 and interest to balance the charge thereof made against him when said rate-bill was put into his hands for collection, and no charge exists in favor of said town against your respondent, as collector, upon said rate-bill.

And your petitioner further says, that said town, on the 27th day of September, 1877, surrendered to him the bond which he as such collector gave to said town to secure the faithful discharge of his duties as such, and that he is wholly released therefrom, and that all the facts above alleged occurred and took place prior to the date and impetration of said information and motion. And the respondent avers that all the allegations in said motion, not herein admitted to be true, are untrue.

Wherefore, for each and all of the causes and reasons in this his answer and return set forth, the said respondent insists that said writ of mandamus should not issue as prayed for in said motion, and he prays the judgment of the court thereon, and that he may be hence dismissed.

To this return the State's Attorney demurred, and the questions arising on the demurrer were reserved for the advice of this court.

*C. B. Andrews,* for the relator.

1. The only tribunals known to the law in this state for the purpose of determining the amount of each individual's taxable property are the assessors and the board of relief. Gen. Statutes, p. 152, sec. 1, and p. 159, sec. 35; *Goddard* v. *Seymour,* 30 Conn., 394; *Munroe* v. *New Canaan,* 43 id., 309. Assuming that these officers committed no error or illegality in making their valuation (and no error is claimed,) it will be admitted that it was the duty of the company to pay the sum of $3,375, as their tax.

2. There being a valid tax lawfully laid against a party abundantly able to pay it, the town of Torrington had no authority to abate it or any part of it. Towns have no inherent powers. They have only just such power as is expressly or impliedly granted to them by the legislature. *Abendroth* v. *Greenwich,* 29 Conn., 356; *Baldwin* v. *North Branford,* 32 id., 47; *Booth* v. *Woodbury,* id., 118; *Hoyle* v. *Putnam,* 46 id., 56. The powers of towns are to be strictly pursued. *Betts* v. *Starr,* 5 Conn., 550; *Comstock* v. *Hadlyme Eccl. So.,* 8 id., 247; *Higley* v. *Bunce,* 10 id., 436. The

power to abate a tax is not among the powers granted to towns by our statutes. A town cannot by a vote exempt property from taxation.   *Weeks* v. *Milwaukee*, 10 Wis., 242, 265.   The assessment and collection of taxes are acts of sovereignty, effectual only because authorized by the state. *Heine* v. *Levee Commissioners*, 19 Wall., 660.   Towns are the instrumentalities which the state uses to accomplish the several steps in the levying and collecting taxes.   They have no power of their own.   The tax assessors and collectors are the agents of the law, rather than of the town.   Gen. Stat., p. 165, sec. 21; Cooley on Taxation, 292; *Tomlinson* v. *Leavenworth*, 2 Conn., 292; *Torrington* v. *Nash*, 17 id., 199; *Farrell* v. *Bridgeport*, 45 id., 191; *Torbush* v. *Norwich*, 38 id., 225; *Jewett* v. *New Haven*, id., 368.   In the statutory provisions for raising money by taxation, the town is not called into action, except to pass the introductory vote. And if they fail to do this, the law authorizes and requires the selectmen to do it.   Gen. Stat., p. 161, sec. 47.   The legislature foresaw that poverty might prevent some individuals from paying their taxes, and gave the selectmen power to abate in such cases.   Gen. Stat., p. 162, sec. 10.   But they have given no authority to abate for any other cause, and no authority to the town to abate at all.   " A statute that prescribes that a thing should be done in a particular way carries with it an implied prohibition against doing it in any other way."   *N. York Firemen's Ins. Co.* v. *Ely*, 5 Conn., 572; *New Haven* v. *Whitney*, 36 id., 375.   Broom's Legal Maxims (7 ed.), 664.   As to the collection of the tax, the selectmen have certain powers and obligations, but the town itself has " no duty to perform, no rights to defend, and no interest to protect."   *Gregory* v. *Bridgeport*, 41 Conn., 76, 86.   The money raised by taxation is to be held and used by the town as a public trustee, not as the beneficial owner.   Part flows directly back to the state treasury and the rest is to be applied in discharge of those public duties which are imposed upon towns by the legislature, such as the support of highways and bridges, schools, paupers, &c., *Loan Association* v. *Topeka*, 20 Wall., 655;

Cooley's Const. Lim., 487; *Chidsey* v. *Canton*, 17 Conn., 478; *New London* v. *Brainard*, 22 id., 552; *Jenkins* v. *Andover*, 103 Mass., 94; *Morse* v. *Stocker*, 1 Allen, 150. Public policy forbids that a town should have the power by vote to abate a tax. If a town can release the tax of one man, because they think the board of relief have acted injudiciously, they can release the tax of any and every other. *Weeks* v. *Milwaukee*, 10 Wis., 242, 263. To abate the tax of a person able to pay would be to increase the tax of every other tax-payer. Under the guise of an abatement, it would take money from all the other citizens to give to one. It would destroy the equality which is necessary to all just taxation. "It would be the robbery and spoliation of those whose estates in whole or in part are confiscated." *Allen* v. *Jay*, 60 Maine, 142. Towns cannot give away town property to private individuals for private use. *Booth* v. *Woodbury*, 32 Conn., 118; *Gregory* v. *Bridgeport*, 41 id., 76, 87; *Allen* v. *Inhabitants of Marion*, 11 Allen, 108. And whether it be a gift, or a loan, or an abatement of any lawful obligation, the principle is the same. *Lowell* v. *Boston*, 111 Mass., 454; *Attorney-General* v. *Boston*, 123 id., 460; *Weismer* v. *Village of Douglas*, 64 N. York, 91; *Loan Association* v. *Topeka*, 21 Wall., 655; Opinion of the Judges, 58 Maine, 560; *Brewer Brick Co.* v. *Brewer*, 62 id., 62; *Farnsworth Co.* v. *Lisbon*, id., 451.

3. Mandamus is the proper remedy. The relator has a clear right to *some* remedy. Every tax-payer has the right to insist that every tax lawfully laid against a person who is not "poor and unable to pay the same" shall be collected. *New London* v. *Brainard*, 22 Conn., 552; *Webster* v. *Harwinton*, 32 id., 131; Moses on Mandamus, 139. And mandamus is the only remedy. 3 Black. Com., 110; High Ex. Rem., § 143; *Smyth* v. *Titcomb*, 31 Maine, 272; *Tremont School District* v. *Clark*, 33 id., 482; *Commissioners of Knox Co.* v. *Aspinwall*, 24 How., 376; *Rees* y. *Watertown*, 19 Wall., 107, 117; *Waldron* v. *Lee*, 5 Pick., 323; 4 Bacon Abr., 495, *Mandamus*. But even if the relator had no inter-

est, the state is interested; and mandamus should issue in its behalf. *Attorney General* v. *Boston*, 123 Mass., 460, 477; *State* v. *Hart. & N. Hav. R. R. Co.*, 29 Conn., 538; *Gilman* v. *Bassett*, 33 id., 298; *Lyon* v. *Rice*, 41 id., 245.

*G. C. Woodruff* and *E. W. Seymour*, with whom was *G. H. Welch*, contra.

1.  The writ of mandamus should have been applied for and prosecuted by the State's Attorney alone, and not upon the relation of an inhabitant of the town, who is injured, if at all, in common with the other tax-payers of Torrington. That it could not have been maintained by the relator in his own name alone, inasmuch as the subject-matter of the writ concerns all the tax-payers of the town alike, was decided in *Lyon* v. *Rice*, 41 Conn., 245, and *Peck* v. *Booth*, 42 id., 275. Whether the prosecuting officer alone must apply for and prosecute the writ, in a case like the one at bar, or whether it may be prosecuted by any tax-payer of the town as relator, has never been decided in this state, and the authorities differ upon the question. We urge the adoption of the rule requiring the prosecuting officer alone to prosecute where public rights are concerned. *Rex* v. *Merchant Tailors' Co.*, 2 Barn. & Adol., 115; *Sanger* v. *Commissioners of Kennebec*, 25 Maine, 291; *State* v. *Inhabitants of Strong*, id., 297; *Wellington* v. *Petitioners*, &c., 16 Pick., 105; *People ex rel. Drake* v. *Regents*, 4 Mich., 98; *Russell* v. *Inspectors of State Prison*, id., 187; *Linden* v. *Almeda Co.*, 45 Cal., 6; *Heffner* v. *Commonwealth*, 28 Penn. St., 108.

2.  A mandamus will not be granted except in favor of a clear and well-defined legal right, and where there is no other adequate remedy. *Am. Asylum* v. *Phœnix Bank*, 4 Conn., 178; *Peck* v. *Booth*, 42 id., 271. This application is brought in its present form on the ground, of course, that the relator, in common with the other inhabitants and tax-payers of Torrington, has a public interest in the subject matter thereof; it is a public and not a private right which is sought to be enforced. The question then arises—Has the public—namely, the public about whose rights the relator

is solicitous—any other adequate remedy ? We say it has.
1. By suit on the collector's bond, if he has failed to faith-
fully discharge his duties. 2. If a more summary remedy
is preferred, then by proceedings undertaken by the select-
men for an execution against his body and estate. Gen.
Stat., p. 162, sec. 6. Where there is other specific remedy
or other means of satisfaction equivalent to specific relief, a
mandamus will not be granted. *Am. Asylum* v. *Phœnix
Bank,* 4 Conn., 178.

3. A mandamus will not be issued, because, under the
facts of this case, there is no uncollected tax against the
company which it is the duty of the collector to collect.—
(1st.) The vote passed by the town was a legal vote. It
justified the acts of the selectmen performed in pursuance
of it, and the vote, together with the subsequent acts of the
town and its selectmen, treasurer and collector, absolved the
respondent from any further duty to collect the balance
claimed by the relator to be still due from the company.
Cooley (Const. Limitations, 190) says:—"It has already been
seen that the legislature cannot delegate its authority to
make laws ; but, fundamental as this maxim is, it is so qual-
ified by the customs of our race and by other maxims which
regard local government, that the right of the legislature,
in the entire absence of authorization or prohibition, to
create towns and other inferior municipal organizations, and
to confer upon them the powers of local government, and
especially of local taxation and police regulations usual with
such corporations, would always pass unchallenged." In
the Town Bounty cases, the inherent powers of towns in
Connecticut was the subject of much discussion. Our courts
refused to accord to the towns that amount of sovereignty
with which they have always been credited by historians
and popular writers on government. But the possession of
such powers as are necessary to the performance of their
duties as territorial and municipal corporations, in addition
to the powers expressly granted by the legislature, was rec-
ognized. *Baldwin* v. *North Branford,* 32 Conn., 54; *Booth*

v. *Woodbury*, id., 124; *Webster* v. *Harwinton*, id., 131.   Previous to the revision of 1875, we had a statute providing that towns might make such orders, rules and regulations for their welfare as they might deem expedient, and that they " shall grant annual taxes on the assessment list last made out." Rev. Stat. of 1866, p. 102, secs. 31, 32.   The revision of 1875 does not contain section 32, that " towns shall grant annual taxes," nor the substance of it.   The provisions applicable are found in Gen. Stat., p. 85, sec. 1, and p. 161, secs. 46, 47.   It follows then under our present statutes,—and the same were in force in October, 1875, when the tax in question was voted,—that the right of a town to grant taxes arises : (1) By virtue of the provisions of Gen. Stat., p. 85, sec. 1, as to powers of towns to make regulations for their welfare, and which the revisers and legislature undoubtedly thought sufficient for the purpose; (2) by necessary implication; (3) from immemorial custom, or (4) as a power necessary to be exercised " to the performance of its duties as a territorial and municipal corporation."   Whichever way the authority is received, it is the *town* that is authorized to grant the tax.   Now the power to lay a tax involves the power to remit, abate, reduce, stop the collection of, and refund a tax.   There inheres in the power to take up the matter of taxes and vote thereon, the correlative power to vote that they shall not be unjustly laid, and to vote to relieve any upon whom they are unjustly laid.   It is no inconsiderable addition to the force of this argument that the power exists nowhere, unless in the town, to relieve this company from a tax recognized by both parties interested in this proceeding, to wit, the public, represented by the relator, and the company, to be unjust.   And it comes to this, if the town had no right to take the action it did, that there is no way to right a recognized wrong which is full of damage to one party, and which both parties concerned desire to have righted; and, worse yet, that the agent of the town shall be commanded by a mandamus to go forward and consummate a wrong, and thus, by order of the court, force the town to act unjustly.   The broad principle that the right to refund

or abate a tax wrongly assessed or exacted, necessarily follows from the right to grant or collect a tax, is fully recognized by Cooley in his work on Taxation, p. 530. Speaking of refunding taxes, he says: "This is only an abatement made after the tax has been paid or enforced. A general right exists in the state to refund any tax collected for its purposes, and a corresponding right probably exists in the common council or other proper boards of cities, villages, towns, &c., to refund to individuals any sums paid by them as corporate taxes, which are found to have been wrongfully exacted, or are believed to be for any reason inequitable, but no ministerial or executive officer could have any such authority unless expressly given by law." Of course, if, upon general principles, the selectmen of a town may refund taxes inequitably exacted, *a fortiori* can the town itself do it. And if the right of the selectmen to do it, except in certain cases, is restricted by statute (and we can see very good reasons why, except in the case of those actually unable to pay, the action of the town itself should be necessary,) this in no way abridges the power of the town itself. And equally, of course, if a town has a right, for cause, to refund taxes already exacted, it has the right to abate and reduce them before they are collected. Cooley on Taxation, 527.—(2d.) The public having recognized the justice of the company's claim that the additional tax sought to be collected was unjust, and having voted to so reduce the tax as to require payment only of the portion admitted to be just, cannot, certainly while such vote remains unrescinded, be heard to ask this court, in the exercise of its discretion, to issue a mandamus to compel the collection of what it has abated. —(3d.) Aside from the legality of the vote and the general principles applicable to the position of the public, this application cannot be sustained. "A writ of mandamus lies to compel a public officer to perform a *duty* concerning which he is vested with no discretionary power, and which is either imposed upon him by some express enactment or necessarily results from the office which he holds." *Pond* v. *Parrott,* 42 Conn., 13. "It will not lie to compel the performance of

an act where it is doubtful whether the officer has a right to execute the act." 1 Swift Dig. Rev., 578. Upon the facts of this case, is it the respondent's duty to collect the tax in question? Has he any right to do it? If he owes any duty, it is to the town, which voted to abate and reduce the tax, if its selectmen became satisfied it could be legally done. They did so become satisfied, and made a settlement of this very matter with the company, making the abatement and reduction voted by the town. The town treasurer balanced the rate-bill on the tax-list of 1875, which was in the respondent's hands, crediting the sum abated, thereby leaving the rate-bill fully collected; and gave credit to the respondent as collector on the books of the town of the sum abated, to balance the charge made against him when the rate-bill was put into his hands for collection, so that no charge exists in favor of the town against the collector on the rate-bill; and the town has surrendered to him his collector's bond, and he is fully relieved therefrom.

4. In conclusion, we submit that it would be against law and equity to grant the writ applied for. It is a prerogative writ, granted, not of right, but in the exercise of a sound discretion to be allowed or denied, according as, in the opinion of the court, justice requires; a writ provided, as says our own court in *Treat* v. *Middletown*, 8 Conn., 246, " *to prevent a failure of justice* when there is no established specific remedy, and when, in justice and good government, there ought to be one." There is nothing in this case to require our courts to interfere and prevent the town of Torrington from averting from this company the injustice which the agents of the town attempted.

PARDEE, J. The respondent asks us to adopt the rule requiring the public prosecutor alone to prosecute where public rights are to be protected.

But, as a citizen, the relator has an interest in having all public officers discharge their official duties according to law; as a tax-payer he has an individual pecuniary interest in the collection of all legally assessed taxes and in securing

to himself protection from compulsory contribution to deficiencies resulting from neglect of official duty upon the part of the collector. The fact that the representative of the state permitted him to appear of record as joining in the motion does not call upon us to deny their prayer.

Again, the respondent insists that we should deny the writ because there is adequate remedy at law by suit upon his bond and by execution against his body and estate.

But, the assessed corporation is able, and it is its duty, to pay the tax ; he is able, and it is his duty, to collect it. The town and the relator each have the right to insist that he shall perform his duty according to law ; and he is not to be heard to suggest that he can be punished for non-performance. Moreover, collection is certainty ; the substitutes offered by him may each prove fruitless ; neither is in any sense adequate.

Again, he insists that the vote of the town absolved the corporation from the duty of paying, and himself from the duty of collecting the tax.

This court has repeatedly declared that towns have no inherent powers ; none except such as they have either by express grant or necessary implication. The State makes them its instruments in the administration of civil and criminal justice, in the construction and reparation of highways, in the maintenance of schools, and in the support of the poor. The requirement by the legislature is that they shall raise by taxation sufficient, and only sufficient, money to defray the expense attendant upon the discharge of duties imposed or the performance of acts permitted ; this to be estimated with all convenient certainty. When the proper officers have legally placed upon each individual his share of this public burden, the town has no power to lift it from him, he being of ability to pay, either in the form of abatement before, or in that of gift after collection ; for, this being done, a deficiency would result, to be supplied by the imposition of additional assessments upon others : and this is to violate the fundamental law of taxation, that it shall bear equally upon all.

Moreover, money being absolutely necessary to the existence of the government, taxes must be paid with promptness. To this end the legislature has provided a simple, economical and effective method; and the establishment of this, as a matter of law, prevents the use or existence of any other; nothing remains to the town, the officers, or the individual but obedience.

After the assessors have completed their valuation, it is subject to review and correction by the board of relief, which is vested with power to increase the items of taxable property in the list of any person, or the number, quantity or amount of any such item, upon hearing after notice. So far as this question is concerned, which is wholly one of valuation, that board was by statute the court of final resort; no appeal lay from its action. The assembled inhabitants of the town were without power in the matter, and for the wisest reasons; the power to release one person of ability to pay, from payment of a lawful tax, is the power to release others—to release all; and that means the nullification of proceedings for the assessment and collection of taxes as often as they may be instituted. The power to diminish the burden imposed upon one implies the power to increase that of another; this means the usurpation by the town of powers vested solely in the board of relief. The statute giving to that board power to review the entire assessment list and to increase or diminish individual assessments, is in effect the prohibition of the town from action thereupon.

The Superior Court is advised to grant the writ prayed for.

In this opinion the other judges concurred; except CARPENTER, J., who dissented.