THE BRIDGEPORT BRASS COMPANY *vs.* EDWARD A. DREW, TAX COLLECTOR, ET AL.

Third Judicial District, New Haven, January Term, 1925.

BEACH, CURTIS, KEELER, MALTBIE and WOLFE, Js.

Section 1255 of the General Statutes provides that "any clerical omission or mistake in the assessment of taxes may be at any time corrected according to the fact." *Held* that this statute conferred upon each board the power at any time to correct its own clerical omissions or clerical mistakes; but that it was not intended to authorize assessors to review an assessment which has been appealed to and revised by the board of relief, by declaring that, in their opinion, it contains a clerical error which should be corrected according to the fact, as they see the fact; nor do assessors derive this power from similar language contained in the so-called validating Acts passed at each session of the General Assembly.

Merely because an assessment of factory buildings revised by the board of relief, does not conform to the figure which would have been reached by the assessors if they had not miscalculated the floor space in making the original assessment, does not establish the existence of a clerical omission or mistake in the revised assessment, where it does not appear that the board of relief adopted the same system of valuation as the assessors or that the assessors' system was the only true one.

Assessors have no implied power to settle pending litigation arising out of assessments, since such power is not necessary to the proper performance of their statutory duties.

Ratification and estoppel are grounds for enforcing a contract against a municipality only where the contract, though not executed in the particular manner required by law, is one which the municipality has power to make.

An agreement by assessors to reduce an assessment, revised by the board of relief, in consideration of the taxpayer's abandonment of his right of appeal to the Superior Court, is not enforceable on grounds of ratification or estoppel, since it is a contract beyond the power of the municipality and its officers to make.

One dealing with a municipal officer or agent in the transaction of purely governmental matters is bound to know the legal limitations of his authority.

Argued January 29th—decided March 25th, 1925.

Suit for an injunction to restrain the collection of a city tax upon the plaintiff's property and for other relief, brought to and reserved by the Superior Court in Fairfield County (*Banks, J.*), upon an agreed statement of facts, for the advice of this court. *Judgment advised for the defendants.*

For the purposes of a preliminary statement, the facts agreed on may be outlined as follows:   On, before and ever since September, 1920, the plaintiff was and is a manufacturer owning two plants in the city of Bridgeport; an older plant, called the main plant, and a newer, known as the Housatonic plant.   These properties were duly and seasonably listed for taxation by the plaintiff in September, 1920, and the then tax commissioner of the city of Bridgeport, Arthur F. Connor, assessed their value for taxation at $5,061,374; the valuation of buildings in the main plant being based on the application of a unit of value per square foot of floor space, to an assumed floor area of 655,800 square feet.   The actual total floor area of the plaintiff's main plant was 404,166 square feet, and if the unit of value per square foot ($2) used by the commissioner was a fair and just unit, the commissioner's computation resulted in an overvaluation of these buildings amounting to $397,231.   This was offset, in part, by an error in computing land areas resulting in an undervaluation of the land, provided the unit of

valuation per square foot of land used by the commissioner was a fair and just unit. The net overvaluation of the main plant, assuming that the application of the commissioner's units of value to the corrected measurements would have ascertained its true and just value, was, in round figures, $300,000. Plaintiff seasonably appealed to the board of relief for the correction of these errors and for other alleged over-assessments aggregating $700,000. The board of relief, after a hearing, reduced the assessment on the buildings of plaintiff's main plant in the amount of $133,449, and reduced the assessment on inventories, machinery, etc., in both plants, in the amount of $75,000; and assessed the entire taxable estate of the plaintiff at $4,852,925. This latter assessment was used by the board of relief in compiling the grand list submitted to the board of apportionment and taxation, upon which the last-named board determined the tax rate for 1920, its final action being taken April 19th, 1921. Thereafter, in accordance with the Bridgeport charter, rate bills were delivered to the tax collector, together with a warrant, signed by the mayor, authorizing and requiring the tax collector to collect of the several persons named in the rate bills the amount of the tax set against the name of each. The amount set against the plaintiff's name was based on the reassessment made by the board of relief.

Upon learning of the action of the board of relief, the plaintiff, believing that the reduction of the assessment on its main plant was insufficient, and believing that it had just grounds for appealing from the action of the board of relief to the Superior Court, protested to the tax commissioner against the action of the board of relief, and entered into negotiations with the tax commissioner with a view to obtaining from him an additional substantial reduction of the assessment on

the buildings of its main plant, stating, that if such reduction were made, it would not appeal to the Superior Court. As the result of these overtures a revaluation of the plaintiff's plant was made by an expert employed by the tax commissioner for that purpose, and a so-called certificate of error was issued, over the signature of the tax commissioner, purporting to reduce the revised assessment made by the board of relief in further sum of $120,000, and the plaintiff, believing that the tax commissioner's action was lawful and binding on the city of Bridgeport and its tax officials, permitted the time within which it might have taken an appeal from the doings of the board of relief to expire.

Both the plaintiff and the tax commissioner believed that the latter had power to so revise and reduce the plaintiff's assessment under § 1255 of the General Statutes. In this connection it is stipulated, that "for a number of years the tax commissioner and the assessors of the city of Bridgeport have made corrections in assessments of taxpayers, of every character, including those involving changes of valuations and irrespective of action by the board of relief in the premises, and have assumed to have power and authority so to do under the provisions of § 1255 of the General Statutes."

Pursuant to the certificate of error above mentioned, the then tax collector made entry upon his books, under a column headed "abatements," of a credit of $3,468 against the amount of taxes included in the plaintiff's rate bill, and rendered a tax bill to the plaintiff for the balance, which the plaintiff duly paid.

In November, 1921, the defendant Edward A. Drew succeeded to the office of tax collector, and on July 30th, 1924, the defendant Drew made demand on the plaintiff for the payment, with interest, of the sum of

$3,468, by authority of a warrant requiring him to collect taxes remaining unpaid on the list of 1920.

*Philo C. Calhoun,* for the plaintiff.

*John A. Cornell,* Jr., for the defendant Edward A. Drew, Tax Collector.

*Alexander L. DeLaney,* for the defendant City of Bridgeport.

BEACH, J.  Questions one and three ask whether the action of the tax commissioner was authorized by § 1255 of the General Statutes, providing that "any clerical omission or mistake in the assessment of taxes may be at any time corrected according to the fact by the assessors or board of relief, and the tax shall be levied and collected according to such corrected assessment."  The charter of the city of Bridgeport (Special Laws of 1917, p. 839) provides for the abolishment of the board of assessors and the substitution in its place of a tax commissioner, who "shall have all the powers and duties exercised by boards of assessors; and appeals from assessments to the board of relief shall be taken in the same manner as from boards of assessors."  In looking for the mischief which § 1255 was intended to cure, we find that assessors, except as otherwise specially provided, are required to lodge the abstract of assessment lists in the town clerk's office on or before January 31st in each year.  Before the broad authority conferred on them by §§ 1149 and 1197 is exhausted by lodging the abstract in the town clerk's office, assessors have abundant power to correct omissions or mistakes, clerical or otherwise, independently of § 1255.

In like manner boards of relief, when their appellate

jurisdiction is properly invoked, have abundant authority to correct all kinds of omissions or mistakes in assessment lists, independently of § 1255, up to the last business day in February in each year, when they are required, except in New Haven, to complete the duties imposed on them. Evidently the purpose of § 1255 was to give to "assessors or board of relief" a limited continuing authority to correct any "clerical" omission or mistake at any time irrespective of whether their larger jurisdiction had been terminated.

The words "at any time" apply with equal force to assessors and to boards of relief, and the jurisdiction is in terms conferred in the alternative upon one or the other. We think this choice of words was intentional, for it is apparent that the board of relief has no authority except over assessments which have come within its appellate jurisdiction or its general jurisdiction to equalize taxes. Assessments not acted on by the board of relief remain within the jurisdiction of the assessors, for the purpose of correcting clerical omissions and mistakes. Conversely, when the appellate jurisdiction of the board of relief has been invoked and exercised, as in this case, by a revision of the original assessment, it would seem to be inconsistent with the statutory powers of boards of relief, and with the remedy by appeal to the Superior Court, to construe § 1255 as authorizing the assessors, whose valuation has thus been revised, to declare the existence of a clerical omission or mistake in the revised assessment, and proceed to correct it according to the fact, as they see the fact. The authority is given in the alternative to one board or to the other, and with the purpose, we think, of authorizing each at any time to correct any clerical omission or mistake which it may have inadvertently made or overlooked in attempting to ascertain the present true and just value of the estate

assessed. We also think it clear, in view of the statutes requiring assessors and boards of relief to complete their duties on or before specified dates, that the adjective "clerical" qualifies "mistake" as well as "omission."

Looking at the question of jurisdiction from another point of view, it is apparent that much depends on the character of the alleged clerical omission or mistake. In the instant case the claimed mistake arose out of the attempt to compute the true and just value of a group of factory buildings varying in cost, construction and condition of depreciation by applying the same mathematical formula to each. There may be more ways than one of estimating the value of such a plant for taxation. *Underwood Typewriter Co.* v. *Hartford,* 99 Conn. 329, 122 Atl. 91. Certainly the method adopted by the tax commissioner was not the only legal and proper one. At best the process is one of approximation and judgment, and there is a margin for a difference of opinion between the assessors and the board of relief as to the true and just value or the fair market value of such a plant.

We assume, for the purposes of this opinion, that the original assessment by the tax commissioner based on the application of a unit value of $2 per square foot to an assumed total floor area much greater than that which in fact existed, resulted in a clerical mistake. It does not follow, however, that this mistake would necessarily be corrected "according to the fact," that is to say, so as to determine the approximate true and just value of the plant, by applying a unit value of $2 per square foot to the actual floor area of the plant; because it is neither stipulated nor admitted that a unit value of $2 per square foot is the true and just value per square foot of floor area of this or other factory plants of the same character.

However that may be, the plaintiff appealed to the

board of relief, and thereby subjected its property to revaluation and the assessment to revision by that board. The revised assessment by the board of relief was less than that made by the tax commissioner. It does not appear what method of valuation the board of relief adopted in revising the assessment; still less does it appear that there exists any clerical omission or mistake in the revised assessment itself. Nor does it appear from the agreed statement of facts that in asking the commissioner for a further reduction the plaintiff pointed to any alleged clerical omission or mistake in the assessment as made by the board of relief, which it desired the commissioner to correct. Indeed, it positively appears that the commissioner did not seem to regard his authority as limited to the correction of a specific clerical omission or mistake, for he began the process of appraisal for taxation over again by employing an expert appraiser to value the plant *de novo,* and, acting on his revised information as to the value of the plant, deducted $120,000 from the assessment made by the board of relief; being, perhaps, influenced in some degree by the plaintiff's statement that it would not appeal to the Superior Court if that deduction were made.

We are of opinion that the tax commissioner of the city of Bridgeport had no authority under § 1255 of the General Statutes to revise and reduce the assessment made by the board of relief. Questions two, four and six ask whether the purported reduction in plaintiff's assessment was authorized by § 1 of Chapter 320 of the Public Acts of 1919, or by § 1 of Chapter 401 of the Public Acts of 1921. These Acts are general validating Acts of the type adopted at every session of the General Assembly, and the portion particularly referred to in each Act is this—"and all assessment lists in which any omission

or mistake has been made may at any time be corrected by the assessors or board of relief."

This language is the same as the corresponding words in § 1255, except for the omission of the word "clerical," but at least there must be an actual omission or mistake. And these questions must be answered in the negative; first, because it does not appear from the stipulation that any omission or mistake exists in the revised assessment made by the board of relief; and, second, because the tax commissioner had no authority to correct the revised assessment made by the board of relief, for the reasons given in construing § 1255.

Question five asks whether the purported reduction was within any implied power of the tax commissioner. The general rule is that municipal officers whose authority is defined by statute or charter have no implied powers except such as are necessary to carry into effect the powers expressly conferred on them. This is a general rule of public policy. *Turney* v. *Bridgeport,* 55 Conn. 412, 418, 12 Atl. 520; *Thomas Motor Car Co.* v. *Seymour,* 92 Conn. 412, 414, 103 Atl., 122; Mechem on Public Officers, p. 335. As we have held that the tax commissioner had no express authority to make the purported reduction of the plaintiff's assessment, it must follow that he had no implied power to do so.

It is urged that some implied authority to compromise impending litigation concerning over-assessments of property for taxation must exist; but if that be so, it is not a power necessary to the performance of their statutory duties by assessors, in whose shoes the tax commissioner stands.

Whether the corporation counsel may bind the city by compromising claims for reduction of assessments before an appeal is taken to the Superior Court, is a question not before us.

Questions seven, eight, nine and ten inquire whether

the action of the tax commissioner, though done without legal authority to make a formal agreement of settlement and compromise, may nevertheless bind the city, in view of the plaintiff's subsequent reliance thereon, and of the acquiescence of the city therein, until July, 1924, either as a settlement, or on the ground of ratification by conduct, or of equitable estoppel.

In view of the stipulation as to the long-continued practice of the tax commissioner and his predecessors, based on the mistaken assumption that § 1255 authorized the tax commissioner to reduce assessments, including those involving changes of valuations and irrespective of action by the board of relief, and in view of the fact that the plaintiff, in reliance thereon, allowed the time for taking an appeal to the Superior Court to elapse, we would answer these questions in the affirmative, if we could find any warrant of law for doing so in the authorities relied on by the plaintiff.

In the exercise of some of its governmental powers, a municipal corporation is incidentally required to go into the market and engage in business transactions with private persons, and in respect of such transactions it may be bound by acts or omissions of its officers and agents outside of their actual authority.

Most of the contract cases cited by the plaintiff relate to transactions of this kind, where the municipality has vainly attempted to escape the obligation of an executed contract which its officers had sufficient authority to make, on the ground that the contract was not executed in the particular manner required by law. Where the contract is one which the municipality had power to make, it is possible for a court to hold that the municipality has, by taking the benefit of the contract, ratified it, or estopped itself from claiming it was not executed according to law. *New Haven, M.*

& *W. R. Co.* v. *Chatham,* 42 Conn. 465; *Rocky Hill* v. *Hollister,* 59 Conn. 434, 22 Atl. 290; *Norwalk Gaslight Co.* v. *Norwalk,* 63 Conn. 495, 28 Atl. 32.

On the other hand, where the contract is one which the municipality and its officers had no power to make, it is not easy to see how a court can say that the municipality has made such a contract by ratification; or that it will decree enforcement of such a contract against the municipality.

In *State ex rel. Coe* v. *Fyler,* 48 Conn. 145, a writ of mandamus was prayed for requiring the respondent, as tax collector of the town of Torrington, to collect a tax laid on the property of the Coe Brass Manufacturing Company of that town. The respondent made return showing that the property was assessed by the assessors; that the board of relief, after notice and hearing, in the equalization of taxes, raised the amount of the assessment, and thereby increased the rate bill of the Coe Brass Manufacturing Company from $2,462.25 to $3,375; that the Coe Brass Manufacturing Company paid the respondent, as collector, $2,462.25, and refused to pay the balance of $912.75; that upon the advice of the selectmen, he delayed the collection of such balance, and that thereafter, at a special town meeting warned for that purpose, the town voted to abate and reduce the tax to $2,462.25. We held (p. 159) that "the assembled inhabitants of the town were without power in the matter, and for the wisest reasons; the power to release one person of ability to pay, from payment of a lawful tax, is the power to release others—to release all; and that means the nullification of proceedings for the assessment and collection of taxes as often as they may be instituted. The power to diminish the burden imposed upon one implies the power to increase that of another; this means the usurpation by the town of

powers vested solely in the board of relief. The statute giving to that board power to review the entire assessment list and to increase or diminish individual assessments, is in effect the prohibition of the town from action thereupon."

Since that decision the statutes have not been materially changed, except by the passage of what is now § 1255, herein construed, and by the statute of 1878, now § 1240, authorizing appeals to the Superior Court from the doings of the board of relief. This latter statute, by affording a remedy by appeal, seems to make it still more clear that in effect municipal corporations are prohibited from revising assessments after appeal to and revision by the board of relief.

In *Atwater* v. *O'Reilly*, 81 Conn. 367, 370, 71 Atl. 505, a somewhat similar case, where the town had, to avoid litigation, voted to accept $1 in full settlement of a military tax of $2, we said: "The resolution of the town meeting was ineffectual to reduce the amount of a tax duly laid"; citing *State ex rel. Coe* v. *Fyler, supra.* There being no stipulation that any omission or mistake existed in the revised assessment made by the board of relief, this record presents a case of an attempted reduction of taxes by the tax commissioner, in the nature of a compromise, made after revision of the assessment by the board of relief. It falls directly within the two cases last cited, and we are without power to advise the Superior Court to effectuate a reduction of assessment which neither the tax commissioner nor the city of Bridgeport had authority to make, and which they were in effect prohibited from making.

In view of the conclusions reached, it follows that the plaintiff is not entitled to pursue the action, for the purpose of obtaining a reassessment of its property by the Superior Court. The legal objection to the

introduction of evidence on that issue is obvious, and the suggestion that the action may be maintained on the theory of preventing the city from unjustly enriching itself by taking advantage of a mistake of law, seems to assume that the revised assessment made by the board of relief was excessive, and to involve an indirect attempt to enforce, in whole or in part, the reduction agreed to by the plaintiff and the tax commissioner. As to the mistake of law, we do not see how the plaintiff can answer the objection that persons dealing with municipalities through their officers and agents, especially in respect of purely governmental matters, are bound to know the legal limitations of their authority. *Turney* v. *Bridgeport*, 55 Conn. 412, 12 Atl. 520; *Cooper* v. *Derby*, 83 Conn. 40, 75 Atl. 140; *Chatfield Co.* v. *Waterbury*, 88 Conn. 322, 91 Atl. 436; *Thomas Motor Car Co.* v. *Seymour*, 92 Conn. 412, 103 Atl. 122.

All the questions submitted are answered in the negative, and the Superior Court is advised to enter judgment for the defendants. No costs will be taxed in favor of either party in this court.

In this opinion the other judges concurred.