CITY OF BRIDGEPORT ET AL.
*vs.*
WILLIAM P. KIRK ET AL.

Court of Common Pleas Fairfield County File No. 39571

MEMORANDUM FILED MARCH 19, 1940.

*David Goldstein*, of Bridgeport, for the Plaintiffs.

*Theodore Steiber*, of Bridgeport, for the Defendants.

DWYER, J. By the allegations of the complaint, it appears that on September 1, 1922, one Gallagher, trustee, was the owner of certain real estate in Bridgeport, and by a tax in the amount of $1,410.64 was assessed thereon by the city, which tax became due and payable on April 1, 1923. On March 31, 1924, a lien certificate for said tax was filed and recorded on the land records as required by statute. No part of the amount secured by the lien has been paid. The named defendant now owns the premises, while the defendant, The Bridgeport-City Trust Company, claims an interest therein by reason of certain mortgages. For relief, the plaintiffs seek a foreclosure of the tax lien mentioned.

The trust company has filed an answer, alleging in substance, that at some time prior to the assessment date mentioned above, the premises were owned by one Frank, who became so financially involved that the premises were turned over to a trustee; that before the time for appealing from the assessment had expired, a dispute arose as to the amount of the valuation placed on the property by the tax commissioner; that said dispute was "compromised by an oral agreement entered into by the defendant, William P. Kirk, (and) the then City Attorney of the City of Bridgeport and the Common Council" providing that upon an agreement not to appeal from the assessment, said tax should be settled for $1,000; that on October 4, 1923, the common council passed a resolution providing for the settlement of said dispute upon payment of $1,000 within 15 days of said meeting; that said payment was made on October 15, 1923. From this, it is argued that the city has no present right to enforce the lien mentioned.

A demurrer to this special defense has been filed by the plaintiffs containing two paragraphs which present the same question, namely, whether or not the city attorney and the common council had the authority to compromise the tax under the circumstances alleged.

It should be noted that although the "*bona fide* dispute" regarding the assessment arose before the time for appeal from

the assessment expired, the alleged agreement for compromise was not acted on by the council until October 4, 1923. This date was over six months after the time for appealing to the board of relief had expired, and more than four months after the time for appeal from such board had expired, since it does not appear herein that any claim was made that the assessment was "manifestly excessive."

The act creating the office of city attorney merely provides for filling the same for a term of two years and fixes the salary. (Special Laws of 1909, chap. 293, §3; Special Laws of 1911, chap. 172.) The only express authority of such an official, relating to the collection of taxes, is found in section 103 of chapter 461 of the Special Laws of 1907, which provides that the tax collector shall turn over a list of taxes unpaid for three years to such attorney, who shall institute suit for collection.

No reference has been made to any provision of the charter of the city, or of any general statute which gives the city attorney the power to compromise any tax. In general, the duties of such an officer are advisory, although he has charge of the progress of litigation in which the city is involved, but the general authority of an attorney representing any client does not include the power to bind his client by a compromise of the subject matter of such litigation. This rule is based on fundamental principles of the law of agency.

It will be noted from the statement of facts above, that no appeal was taken to the board of relief, and, therefore, there could have been no appeal to the Superior Court. Thus, no litigation was pending which would have brought the tax matter within the jurisdiction of the city attorney, even if it should be contended that the general authority to handle the litigation of the city included an implied authority to make a settlement thereof. Municipal officers have no implied powers except such as are necessary to carry into effect the powers expressly conferred on them. *Bridgeport Brass Co. vs. Drew*, 102 Conn. 206, 214.

Under the provisions of the city charter in force at the time, the tax commissioner took over the powers and duties of the board of assessors and appeals from assessments made by the commissioner could be taken to the board of relief. (Special Laws of 1917, chap. 140.) Among other duties, the commissioner was required to make and equalize all assessments, complete the list and hold the same in the office for public inspec-

tion until December 31st following the assessment date. An abstract of the list was required to be filed in the town clerk's office before February 1st.

The board of relief was required to meet on February 1st, and throughout that month to determine all appeals made by persons claiming to be aggrieved by the assessments. This board was required to complete its duties not later than the last Tuesday of the month.

Until 1878, no right of appeal from the doings of a board of relief was allowed. However, since then, an appeal to the Superior Court is provided for persons aggrieved by the doings of any such board if taken within two months.

It is concluded that the appeals above mentioned provided the sole methods of procuring reductions in valuations for tax purposes after the tax commissioner had properly completed his tax list. *State ex rel. Coe vs. Fyler*, 48 Conn. 145, 159; *Bristol Mfg. Co. vs. Gridley*, 28 id. 201.

It is not claimed that the common council of the city had any express statutory authority to compromise any tax or to modify any assessment. In *Bridgeport vs. Equitable Title & Mortgage Co.*, 106 Conn. 542, 544, it appeared that the council had purported to abate certain taxes and that later the city attempted to reinstate the liens based thereon, and it was stated that the defendants conceded "as upon this record the law would require, that the taxes upon which the liens in question are predicated were not legally abated." It will be observed that the attorney who made this concession was a former counsel for the city.

The common council, as the governing body of a city, takes the place of the old town meetings. In *State ex rel. Coe vs. Fyler, supra*, 159, it was held that a town meeting has no power to modify an assessment, and the court states the very substantial public policy which provides the basis for such a holding. For the same reasons, it must be clear that a council, of limited authority, has no implied right to abate a tax or to reduce an assessment. The only statutory authority for abatement of a tax by the council is found in the act referred to in *Bridgeport vs. First Natl. Bank & Trust Co.*, 125 Conn. 623, 624, relating to the relief of persons who are poor and unable to pay taxes assessed against them, and this act requires the approval or concurrence of the mayor.

The trust company places much reliance on the dictum in *Bridgeport Brass Co. vs. Drew, supra*, where, at page 214, it is said that the question of the authority of the corporation counsel (city attorney) to compromise a claim for reduction of an assessment was not before the court in that case. An examination of the record and briefs (Jan. term, 1925) shows that the question was not raised in the trial court or on appeal. The present argument is that "if the Supreme Court has not made up its mind as to what the law would be in this situation, it could hardly be stated affirmatively that the corporation counsel did not have the authority of the City in the case at bar."

The fallacy of this reasoning is readily apparent. It is fundamental that court opinions are authoritative only in so far as they contain statements of law which are applicable to the facts and determinative of the questions presented for decision in the particular case, and where the court expressly declines to answer a problem, no inference should be drawn regarding probable views of the court to be stated when it has occasion to decide the precise question.

From the foregoing, it is held that the tax commissioner has the sole authority to equalize and change assessments until he turns over his completed list; that thereafter, the board of relief has sole authority to equalize and change assessments until its duties are completed; that, thereafter, no city official or body has authority to modify any assessment, except by authority of a judgment of the Superior Court entered on an appeal from the board of relief; and that the city attorney and the common council have no power to abate the whole or any part of a tax under the circumstances disclosed by the pleadings in this case.

Thus, whether the case is considered as one relating to a reduction of an assessment or as one relating to the compromise of a tax, it follows that the city attorney and the council had no authority to make the settlement claimed by the defendant, and the demurrer to the special defense must be sustained. Any one dealing with a municipal officer or agent in the transaction of purely governmental matters is bound to know the legal limitations of authority of such officer or agent, and the defendants are in no position to take advantage of the agreement on which they rely, as the city attorney and the council had no authority to bind the municipality by such a compromise.

### As to Third Defense

After the demurrer was filed by the city, the trust company filed an amended answer which sets up a third defense alleging in substance that about two months after the purported abate-ment was granted, the trust company caused an inquiry to be made at the tax collector's office and was informed that the books showed no taxes due on the list of 1922; that the lien now sought to be foreclosed was filed thereafter; that in reli-ance upon said statement made by someone in the said office, the company invested $70,000 in the property here involved. On these facts, the company now claims that the city is estop-ped from claiming equitable relief in this action.

Although counsel have argued the question of estoppel, an examination of the demurrer will show that it is not addressed to the third defense, and the question of the legal sufficiency thereof is not now before the court.

The demurrer is sustained on all grounds.