EDWARD CHAPPELL *vs.* EDWARD JARDINE AND OTHERS.

A mortgage was made of real estate at the time within the territory of the state of New York, but which, by the recent establishment of a boundary line between that state and this, became a part of this state. Held—

1. That the laws of the state of New York, in force at the time the mortgage was made, governed its construction and effect.

2. That by the laws of New York a mortgage conveyed no title, but was only a pledge or mere security for the debt.

3. That after the land became a part of this state our laws could not operate on the mortgage in such a way as to vest a title in the mortgagee.

4. That instead of decreeing a foreclosure of the mortgage in the ordinary way, a court of equity could pass a decree limiting a time for redemption, and on non-payment either ordering a sale of the property or vesting the title in the mortgagee.

The boundary between this state and the state of New York, through Long Island Sound, recently established by the joint boundary commission and accepted by the legislatures of both states, is to be regarded, in the absence of proof to the contrary, as the original boundary ascertained and re-established.

But where, in a suit for the foreclosure of a mortgage, the complaint alleged that the mortgaged premises were in the state of New York when the mortgage was made, but had now become a part of this state by the establishment of the boundary between the two states, and the defendants, by a demurrer to the complaint, admitted this, it was held that the court, upon a writ of error from a decree of foreclosure, might properly take the record as it stood and treat the mortgaged premises as having been originally in the state of New York.

[Argued May 31st, 1883—decided March 19th, 1884.]

SUIT for a foreclosure; brought to the Superior Court. The defendants demurred to the complaint; the court (*Andrews, J.,*) overruled the demurrer and passed a decree of foreclosure. The defendants appealed to this court. The case is sufficiently stated in the opinion.

*J. M. Thayer* and *C. F. Thayer*, for the appellants.

*J. Halsey* and *W. A. Briscoe*, for the appellee.

PARK, C. J. This is a suit for the foreclosure of certain mortgaged premises, constituting an island, known as Ram Island, in Long Island Sound. The complaint alleges that the land mortgaged, at the time the deed was given, lay in the town of Southhold, Suffolk County, in the state of New York, and it is averred that the mortgage was recorded in the office of the clerk of Suffolk County in that state. It is further alleged that Ram Island, by the recent establishment of the boundary line between the state of New York and this state, has become a part of the town of Stonington in this state. The complaint is demurred to, so that the averment stands admitted that the island was, when the mortgage was made, a part of the state of New York.

We have heretofore held (*Elphick v. Hoffman*, 49 Conn., 331,) that the boundary agreed upon by the joint commission of the two states and established by the legislative acceptance of both states, was to be regarded as presumably a designation and establishment of the pre-existing boundary line which had become lost, and not as the establishment of a new line, leaving the matter open to proof in

special cases. If we should apply that rule here, and consider the island in question as having been legally a part of this state when the mortgage was made, we should at once encounter another question of a serious nature. There can be no question that whatever has been the *de jure* jurisdiction over the island, it has been for many years within the *de facto* jurisdiction of the state of New York; and we should be compelled to determine the legal effect upon this mortgage of that *de facto* jurisdiction.

We have thought it as well therefore to take the case as the parties have themselves presented it, the plaintiff by the averments of his complaint and the defendants by the admissions of their demurrer, and regard the island in question as having been within the state of New York when the mortgage was made, and afterwards brought within this state by the establishment of the boundary line. Indeed as the proceeding is in error we can not properly govern ourselves by anything but the record as it comes before us.

And in treating the island as within the state of New York when the mortgage was made we are regarding the contract and the rights of the parties under it, precisely as they themselves understood them at the time.

The mortgaged premises having been in the state of New York when the mortgage was made, it is of course to be governed in its construction and effect by the laws of that state then in force. In *McCormick* v. *Sullivant*, 10 Wheat., 192, the court say:—"It is an acknowledged principle of law that the title and disposition of real property is exclusively subject to the laws of the country where it is situated, which can alone prescribe the mode by which a title to it can pass from one person to another." The same doctrine is held in *United States* v. *Crosby*, 7 Cranch, 115, *Kerr* v. *Moon*, 9 Wheat., 565, *Darby* v. *Mayer*, 10 id., 465, and in many other cases. Indeed the doctrine is unquestioned law everywhere.

Now, according to the laws of the state of New York then and still in force, a mortgage of real estate creates a mere chose in action, a pledge, a security for the debt. It

conveys no title to the property. The claim of the mortgagee is a mere chattel interest. He has no right to the possession of the property. The title and seisin remain in the mortgagor, and he can maintain trespass and eject-ment against the mortgagee, if he takes possession of the property without the consent of the mortgagor. This appears clearly from the following cases.

In *Gardner* v. *Heartt*, 3 Denio, 232, the court say:—" The mortgagee, as such, has no title to the land mortgaged; he has neither *jus in re* nor *ad rem*, but a mere security for his debt; the title to the land, notwithstanding the mortgage, remains in the mortgagor." In *Power* v. *Lester*, 23 N. York, 527, the court say:—" A mortgage is a mere security, an incumbrance upon land. It gives the mortgagee no title or estate whatever. The mortgagor remains the owner, and may maintain trespass even against the mortgagee. A mortgage is but a chattel interest; it may be assigned by delivery, and cannot be seized and sold on execution." In *Trimm* v. *Marsh*, 54 N. York, 599, the court say:—" The common law rule * * still prevails in England. There the courts still hold that the legal title passes to the mortgagee, and becomes by default absolutely vested in him at law, and that the mortgagor has, after default, nothing but an equity of redemption to be enforced in a court of equity. After default the mortgagor can again become re-invested with the title to his land only by a re-conveyance by the mortgagee. The same rule prevails in the New England states, and in many of the other states of the Union. But this common law rule has never, to its full extent, been adopted in this state. Here the mortgagor has, both in law and equity, been regarded as the owner of the fee, and the mortgage has been regarded as a mere chose in action, a mere security of a personal nature. * * At common law payment or tender at the law day extinguished the lien of the mortgage and re-invested the mortgagor, without a re-conveyance by the mortgagee, with his title. But tender or payment after the law day did not have this effect, and in such case a convey-ance was necessary; and such is still the law of England,

and of many of the states of the Union. But it has always been the law of this state that payment or tender, at any time after the mortgage debt became due and before foreclosure, destroyed the lien of the mortgage and restored the mortgagor to his full title. As the mortgagee had no title, a re-conveyance was not required by the law as expounded by our courts. So that here the term "law day," which occupies such a prominent place in the early decisions as to mortgages, has no particular significance. The mortgagor has his "law day" until his title has been foreclosed by sale under the mortgage, and it is a misnomer in this state to call the mortgagor's right in the land, before or after default, an equity of redemption; a mere right to go into equity and redeem. This was a proper description of the mortgagor's right in the land according to the law as expounded in England. But in this state the interest of the mortgagor in the land is the same before and after default, and is a legal estate, with all the incidents and attributes of such an estate." See also *Jackson* v. *Willard*, 4 Johns., 42; *Astor* v. *Hoyt*, 5 Wend., 603; *Kortright* v. *Cady*, 21 N. York, 343; *Merritt* v. *Bartholick*, 36 id., 44.

It follows, therefore, that while the land in question remained in the state of New York it was incumbered by a mortgage of this character; and when it came into this state it bore with it the same burden precisely. There was nothing in the change of jurisdiction that could affect the contract of mortgage that had been made between the parties. The title to the property continued to remain in the mortgagor, and it remains in him still. This is clear. The laws of this state could not make a new contract for the parties or add to one already made. They had to take the contract as they found it.

Now it is clear that there is no remedy by way of foreclosure known to our law which is adapted or appropriate to giving relief on a mortgage of this character. Our remedy is adapted to a mortgage deed which conveys the title of the property to the mortgagee, and when the law day has passed the forfeiture, stated in the deed, becomes

absolute at law, and vests a full and complete title in the mortgagee, with the exception of the equitable right of redemption, which still remains in the mortgagor. The object of the decree of foreclosure is, to extinguish this right of redemption if the mortgage debt is not paid by a specified time. The decree acts upon this right only. It conveys nothing to and decrees nothing in the mortgagee if the debt is not paid. After the law day has passed the right of redemption becomes a mere cloud on the title the mortgagee then has, and when it is removed his title becomes clear and perfect. *Phelps* v. *Sage*, 2 Day, 151; *Roath* v. *Smith*, 5 Conn., 136; *Chamberlin* v. *Thompson*, 10 id., 244; *Porter* v. *Seeley*, 13 id., 564; *Smith* v. *Vincent*, 15 id., 1; *Doton* v. *Russell*, 17 id., 146; *Cross* v. *Robinson*, 21 id., 379; *Dudley* v. *Caldwell*, 19 id., 218; *Colwell* v. *Warner*, 36 id., 224.

What effect would such a decree produce upon a mortgage like the one under consideration, where the legal title remains in the mortgagor, and nothing but a pledgee's interest is in the mortgagee, even after the debt becomes due? It could only extinguish the right of redemption, if it could do that. It could not give the mortgagee the right of possession of the property, for the mortgagor has still the legal title, which carries with it the right of possession. It would require another proceeding in equity, to say the least, to dispossess him of that title, and vest it in the mortgagee. Hence it is clear that full redress cannot be given the plaintiff in this proceeding.

But the plaintiff has a lien on the property in the nature of a pledge to secure payment of the mortgage debt. And although our remedy of strict foreclosure may not be adapted to give redress to the plaintiff through the medium of such a lien, still a court of equity can devise a mode that will be appropriate; for it would be strange if a lawful lien upon property to secure a debt could not be enforced according to its tenor by a court of chancery. It is said that every wrong has its remedy; so it may be said that every case requiring equitable relief has its corresponding mode of redress. We have no doubt that a court of equity has the

power to subject the property in question to the payment of this debt, upon a proper complaint adapted to the purpose. When personal property is pledged to secure the payment of a debt, it may be taken and sold, that payment may be made, after giving the pledgor a reasonable opportunity for redemption. So here, we think a similar course might be taken with this property. Such a course would fall in with the original intent of the parties, and with the civil code and mode of procedure of the state of New York. Modes of redress in that state have of course no force in this state, but such a mode of procedure seems to be adapted to a case of this character.

And we further think that on an amended complaint, setting forth all the essential facts, and praying that if there shall be a default in redeeming the property during such time as the court shall allow for redemption, then the right of redemption shall be forever foreclosed, and the legal title and possession of the property be decreed in the mortgagee, such course might be taken.

We think either of the modes suggested might be pursued; but inasmuch as the course which has been taken leaves the legal title and possession of the property in the mortgagor, we think the court erred in holding the complaint sufficient, and in passing the decree thereon.

There is error in the judgment appealed from, and it is reversed, and the case remanded.

In this opinion the other judges concurred.