STATE OF CONNECTICUT *v.* STONYBROOK, INC.

BALDWIN, C. J., KING, MURPHY, SHEA and ALCORN, Js.

Argued April 3—decided May 8, 1962

*Alfred L. Scanlan,* of the District of Columbia bar, with whom were *Hugh A. Hoyt* and, on the brief, *John P. Maiocco, Jr.,* for the appellant (defendant).

*Thomas J. Dolan,* with whom, on the brief, was *James J. O'Connell,* prosecuting attorney, for the appellee (state).

KING, J.  The defendant was tried on a criminal information charging it, in five counts, with certain violations of municipal regulations of the town of Stratford.  It was found guilty, under the first count, of permitting its dwelling units to be occupied by rent-paying tenants without its having obtained proper certificates of occupancy as required by Stratford's regulations, and, under the third count, of failing to provide noncombustible flooring under the furnaces in fifty-four of its dwelling units as required by the Stratford building code. It was found not guilty of the offenses charged in the second count, and the fourth and fifth counts were withdrawn.

The facts necessary for an understanding of our decision concerning most of the claims of error properly before us will now be summarized.  On

August 1, 1941, the United States government, hereinafter referred to as the government, condemned land in Stratford and began the construction of housing units under the provisions of the Lanham Act, 54 Stat. 1125, as amended, 42 U.S.C. § 1521. The units were constructed under the supervision of the Bridgeport housing authority and were operated for the government by that authority until June 30, 1943, when the newly established Stratford housing authority took over the operation under a lease from the government, pursuant to federal regulations, and operated the units until January 17, 1956. During this entire period of construction and operation by the government through the agency of the housing authorities, no certificates of occupancy for the housing units were ever obtained, nor did the construction fully conform to the requirements of the building code of Stratford. On January 17, 1956, the government sold the entire project to Stonybrook Gardens, Inc., a private corporation. Two hundred thousand dollars was paid on the purchase price, and a mortgage on the property was given to the government as security for the balance. Thereafter, on the same day, Stonybrook Gardens, Inc., conveyed the property to Hyman Alpert and Joseph Alpert; on January 10, 1957, they conveyed it to the defendant. Both Stonybrook Gardens, Inc., and the defendant are corporations owned by the Alperts. Before the housing units were sold by the government to Stonybrook Gardens, Inc., the Alperts met with the building inspector of Stratford and were put on notice as to the violations of the building code. At that meeting, the Alperts said that these violations would be taken care of. The violations had been noted by the building inspector when he made an

inspection of the housing units in January, 1955. A copy of this inspection report was given to the Alperts before the units were purchased by them. Fifty-four furnaces in the units did not, at the commencement of the present prosecution, have noncombustible floors, as required by the building code. No certificates of occupancy had been obtained. Private owners are required by § 206 of the building code of Stratford to obtain certificates of occupancy and by § 3707 to have noncombustible floors under the furnaces of housing units such as these. The government admittedly was not bound by these provisions, since an express provision in the Lanham Act empowered the government to construct buildings under the act "without regard to . . . State, or municipal laws, ordinances, rules or regulations." 54 Stat. 1126, 42 U.S.C. § 1521 (b).

The defendant, on a number of grounds, claims that it is not bound by the requirements of the building code. The first ground is that since the government has retained legal title to the property under a mortgage deed executed by Stonybrook Gardens, Inc., a predecessor in title of the defendant, the application of the building code to the property is contrary to the provisions of the Lanham Act and the federal constitution. It is true that as long as the government operated these housing units through its agents it was immune from the effect of the building code. 54 Stat. 1126, 42 U.S.C. § 1521 (b); *United States* v. *City of Chester*, 144 F.2d 415, 420 (3d Cir.); *United States* v. *Philadelphia*, 56 F. Sup. 862, 866 (E.D. Pa.), aff'd, 147 F.2d 291 (3d Cir.), cert. denied, 325 U.S. 870, 65 S. Ct. 1410, 89 L. Ed. 1989. Now, however, the property has been sold to a private corporation, and the claim that it is still protected by federal immunity because

the government retains the legal title is inaccurate and misleading. What the government did, and all that it did, in addition to making an outright sale, was to take back a mortgage for the balance of the purchase price. The defendant, as mortgagor, is the equitable owner of the property and thus its real owner. The government has merely the security rights of a mortgagee, although owing to our common-law concept of a mortgage as an outright conveyance with a defeasance clause, as distinguished from the "lien theory" of New York and most states outside of New England, the government has what is technically termed a legal title, subject to a right of redemption which persists until it is extinguished by an action of foreclosure. *Chappell* v. *Jardine,* 51 Conn. 64, 69; *Struzinski* v. *Struzinsky,* 133 Conn. 424, 428, 52 A.2d 2. This distinction between the common-law and lien concepts of a mortgage is well explained in cases such as *Chappell* v. *Jardine, supra,* 66. Obviously, such a technical legal title as the government has, as mortgagee, is not the equivalent of a legal title in the sense in which the term would be used were the government to be treated as the present owner or operator of the property. In any true ownership, there is no right of defeasance, nor is any action of foreclosure cutting off a mortgagor's equitable right of redemption necessary to acquire full ownership. The government is not the owner of the property, nor does it have legal title thereto in such a manner as to give the defendant immunity from compliance with the Stratford building code.

There is nothing in the finding or the record to indicate that the government intended to retain ownership, possession or control of the property or that it has in any way attempted so to do. It has

retained nothing except its security interest as mortgagee, and this will never ripen into anything more unless there is a default in the mortgage and foreclosure proceedings ensue—something not suggested in this case. The sovereignty of the United States and its attendant immunity from state and local regulations ended with its sale of the property. See *S.R.A., Inc.* v. *Minnesota,* 327 U.S. 558, 564, 66 S. Ct. 749, 90 L. Ed. 851. There is nothing in the Lanham Act indicative of a congressional intent that a private purchaser of federal housing is to be shielded by federal immunity from reasonable local regulations designed to protect the public safety. See *Public Housing Administration* v. *Bristol Township,* 146 F. Sup. 859, 863 (E.D. Pa.). Congress, in enacting legislation within its constitutional authority, will not be deemed to have intended to invalidate state or local rules for the protection of the public safety unless its purpose so to do is clearly stated. Id., 864, and cases cited. The act neither purports to, nor does, confer any authority on one in the position of the defendant, or on anyone other than the government or one acting in its behalf, to ignore, or fail to comply with, the provisions of a local building code. Of course, under the circumstances, no such authority is conferred by the federal constitution.

The principal claim advanced by the defendant for not having to comply with the provisions of the building code is that, by its own terms, the code does not apply to the housing units. This claim is based on the premise that the units were in existence at the time of the passage, on September 27, 1943, of the code, effective October 27, 1943, and therefore, under the express provisions of the code itself, the units need not conform to its provisions.

Insofar as this claim is based on §§ 103 and 104 of the code, it does not merit discussion. Section 502 of the code provides, in part, that "[b]uildings in existence at the time of the passage of this Code, may have their existing use or occupancy continued, if such use or occupancy was legal at the time of the passage of this Code, provided such continued use is not dangerous to life." Since the court made no finding that the use of the housing units is dangerous to life, we are not concerned with that proviso. The adoption of the present code in 1943 took place a year subsequent to the construction of the units. Prior to, and up until, its adoption, there was in existence in Stratford another building code, adopted in 1925 and amended in 1932. It contained substantially the same requirements as the present code with respect to the obtaining of a certificate of occupancy and the maintenance of noncombustible floors under furnaces of dwelling units. Stratford Bldg. Code §§ 7, 177 (1925 as amended). It was repealed by § 17 of the present building code ordinance. The basic issue presented by the defendant's claim is whether the use or occupancy of the housing units was legal at the time of the passage of the present building code in 1943 within the meaning of § 502 of the code, quoted above. The legality of the use, within the meaning of § 502, depends on the nature of the use rather than on the identity of the user.

The use and occupancy, as such, of the housing units could not have been legal in 1943 because they did not conform to the provisions of the 1925 building code, which was in existence prior to the time of the construction of the units. See *Wallingford* v. *Roberts,* 145 Conn. 682, 684, 146 A.2d 588. The fact that the 1925 code was repealed on passage of the

present code does not make the use and occupancy legal. Where a building is constructed or a use commenced in violation of an ordinance which is repealed by another ordinance containing the same restrictions against the building or the use, and also containing a provision that the existing uses of all buildings which complied with the repealed ordinance should be unaffected, the restrictions of the new ordinance apply to the building or the use, and it is not entitled to the status of a legal nonconforming use. *Troutman* v. *Aiken,* 213 Ga. 55, 56, 96 S.E.2d 585; *Leigh* v. *Wichita,* 148 Kan. 607, 613, 83 P.2d 644; *Rapasadi* v. *Phillips,* 2 App. Div. 2d 451, 453, 156 N.Y.S.2d 746; 8 McQuillin, Municipal Corporations (3d Ed.) § 25.186; see *Adley* v. *Paier,* 148 Conn. 84, 86, 167 A.2d 449. Any contrary rule would impute an intent in a new municipal code or ordinance to legalize every violation of the provisions of a previous code or ordinance even though those provisions had been carried over without substantial change. See *Rapasadi* v. *Phillips,* supra. The mere statement of such a proposition demonstrates its absurdity. It is not the law. Rhyne, Municipal Law, p. 234 § 9-7, p. 236 § 9-9.

The sole reason that the housing units here could be used notwithstanding the provisions of the building code was that, under the Lanham Act, the government did not have to comply with the code. Once the government relinquished jurisdiction over the units, governmental immunity ceased. The Lanham Act conferred no immunity on the property, as such. It merely conferred immunity on the government, and those acting in its behalf, during the period of government ownership and control. The housing units here were not built in accordance with the 1925 building code, as amended in 1932, and they

were not in existence when that code was adopted or even when it was amended. The use and occupancy, as such, did not conform to the provisions of that code. These were substantially the same provisions as are in dispute here, and the units could not become legal nonconforming uses so as to be protected by the present code. That code is applicable, by its terms, to the units. Since they never became legal nonconforming uses, the application to them of the code is not unconstitutional as a taking of property without due process or as an unreasonable exercise of the police power, or in any other respect.

Two other claims of the defendant are that the town of Stratford is estopped from enforcing against the defendant the requirements of the building code relating to certificates of occupancy and noncombustible floors under furnaces, and further, that such action is barred by laches. The finding lacks facts which would support either claim. Although the defendant's draft finding and appendix recite additional material relating to these claims, not all of it can be added to the finding as admitted or undisputed. See Practice Book § 397; *Greco* v. *Morcaldi,* 145 Conn. 685, 687, 146 A.2d 589; *Somers* v. *Hill,* 143 Conn. 476, 481, 123 A.2d 468. Additional findings material to these two claims, together with the corrections to which the defendant has shown itself entitled, will now be summarized. In February, 1956, shortly after the government sold the housing units, the building inspector of Stratford notified the Alperts that the heating units violated the building code because they lacked fireproof floors. At that time, the Alperts agreed to correct the violations and to construct fireproof floors in all the furnace rooms, and the building inspector

allowed one year for the correction of the violations. In March, 1957, thirteen months later, this time was extended until June 13, 1957. Finally, the building inspector delayed six more months from that date before filing a complaint. There is nothing in these circumstances justifying a conclusion that the town is estopped from enforcing its building code against the defendant or that enforcement is barred by laches.

The general rule is that the law of estoppel will not be applied to prevent a municipality from exercising its police power. 38 Am. Jur. 375; note, 1 A.L.R.2d 338, 349; see *Pallman* v. *East Haven,* 135 Conn. 593, 594, 67 A.2d 560. Mere delay in the institution of an action to compel compliance with municipal regulations will not constitute laches so as to bar the action. *Wallingford* v. *Roberts,* 145 Conn. 682, 685, 146 A.2d 588. Almost two years after the first promise to make the alterations necessary to bring the housing units into conformance with the building code, the violations had not been corrected. An estoppel rests on the misleading conduct of one party which operates to the prejudice of the other. *Franke* v. *Franke,* 140 Conn. 133, 139, 98 A.2d 804. The fact that a building permit was issued in October, 1956, for the alteration of the housing units to conform to the building code and that this permit was not revoked does not show misleading conduct on the part of the town of Stratford. The permit was obviously to enable the Alperts to carry out their expressed intention to make the housing units conform to the code. A reasonable time for completion of this work was given, and the time was extended even further because actual progress toward this end was being made. Under these circumstances, neither the defendant nor its

predecessors were misled or prejudiced. The money expended to repair the housing units is not lost. The work can still be completed, and when the units conform to the building code, proper certificates of occupancy can be obtained. For the same reasons, this prosecution is not barred by laches. *Kurzatkowski* v. *Kurzatkowski,* 142 Conn. 680, 684, 116 A.2d 906. Certain other claims either were not properly raised or do not merit discussion.

There is no error.

In this opinion the other judges concurred.