[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
FACTS
The subject of this appeal is a certificate of occupancy that the Town of Barkhamsted issued through its Zoning Enforcement Officer to William and Kate Langer. The certificate of occupancy concerns a home that the Langers built on Lot 2, 13 Woodland Acres, Barkhamsted.
Before they commenced constructing their home, the Langers obtained a building permit from the Town. To receive this permit, the Town's Zoning Enforcement Officer (hereinafter, ZEO) certified that "such building, use or structure is in conformity with [the Town's] zoning regulations or is a valid nonconforming use [thereunder]." General Statutes § 8-3 (f). The Zoning Enforcement Officer did make the required certification and the Town issued the permit. (Record, BA00154.)
After construction was complete, the Langers sought and obtained the certificate of occupancy (hereinafter CO) that is the subject of this appeal. (Record, BA0OJ63, BA00164.) This enabled the Langers to occupy their new home. To obtain the CO, the Langers received from the Zoning Enforcement Officer the certification first made when the ZEO "signed off' on the building permit; namely, that "such building, use or structure is in conformity with [the Town's] zoning regulations or is a valid nonconforming use." General Statutes § 8-3 (f). As had been done previously, the ZEO issued the required certification and issued the CO.
The plaintiff, Lorraine Longmoor, another Woodland Acres homeowner who owns several parcels in Woodland Acres, challenged the ZEO's certification, claiming that his zoning conformance decision was incorrect. The challenge came by way of an appeal of the CO's issuance to the local Zoning Board of Appeals. (Record, BA00001.) CT Page 11162
The Woodland Acres subdivision consists of 14 lots off a private, gravel road, and came into existence before there were any zoning regulations in Barkhamsted. (Record, BA00060.) Woodland Acres was created in July of 1967 when Burton Carroll, Jr. recorded a map on the land records entitled "Subdivision of Property of Marshall Case for Burton Carroll." (Record, BA00114.)
Beginning in 1969, lots were sold in the Woodland Acres subdivisions, and lot buyers began building homes on those lots. (Record, BA00165, 00118.) With each new home there was a pre-construction building permit and a post-construction certificate of occupancy. The record actually includes a 1972 building permit for the Longmoor home. (Record, BA00166.) This was the history that the Zoning Enforcement Officer was confronted with on March 21, 2000 when the Langers applied for a permit to build their new home on Lot 2. Finding no basis to treat the Langers differently, the ZEO did what he and his predecessors had done for all the other Woodland Acres lot owners, and he signed off on their building permit. (Record, BA00060.) The building permit was issued on April 4, 2000. (Record, BA00154.)
By early July 2000, the Langers had essentially completed their construction. On July 13, 2000, they applied for a CO. (Record, BA00163.) On July 15, 2000, the Zoning Enforcement Officer signed off on a temporary, seven-day CO, that listed four "Conditions" that would have to be met before a final CO would issue. (Record, BA00163.) The final CO was issued on July 19, 2000. (Record, BA00164.)
On August 17, 2000, Longmoor filed her written appeal with the Zoning Board. (Record, BA00001 et. seq.) Her first ground of appeal was that "the only access to Lot #2, 13 Woodland Acres [the Langer property] is over property that [she] own[s] known as 14A Woodland Acres;" and she had not given the Langers any right "to travel over or through" that land."Id. For her second ground, she maintained that the Langer's lot did not conform to the area and dimension requirements for the RA-2 zone in which the property was located, and even if the lot was created pre-zoning, it failed to satisfy the test for nonconforming lot status under the Town's current regulations. She claimed that the failure to comply with the area and dimension rules of the RA-2 zone could not be excused. (Id.)
On November 29, 2000, the ZBA heard Longinoor's appeal. She reiterated the reasons as explained in her Notice of Appeal. (Record, BA00001.) The record further indicates that both the Zoning Enforcement Officer and the Langers responded to Longmoor's appeal by arguing that Longmoor had waited until the certificate of occupancy stage to challenge its issuance when she could have challenged the issuance of the building permit. CT Page 11163 (Record, BA00043-00057.) They also raised the legal significance of these facts in relation to the issue of preclusion of Longmoor's appeal. (Id.)
The Board denied the appeal at its December 6, 2000 meeting. In so doing, it did not reach the merits of Longmoor's attack on the underlying zoning conformance decision. The ZBA found that the transfer of Lot 14A was improper. The ZBA also concluded "that preclusion by the Applicant did exist." (Record, BA00181.) Finally, the ZBA found that the appeal was untimely; that Longmoor's thirty-day period to appeal the CO began when the temporary CO was issued and that Longmoor had not appealed within thirty days of that date. (Id.)
AGGRIEVEMENT
"[P]leading and proof of aggrievement are prerequisites to the trial court's jurisdiction over the subject matter of the plaintiffs appeal."Jolly, Inc. v. Zoning Board of Appeals, 237 Conn. 184, 192 (1996). The plaintiff is aggrieved within the definition of General Statutes § 8-8
(a)(1)[1] for "aggrieved person" as she is the owner of property which abuts or is within 100 feet of any portion of the land involved in the decision of the Zoning Board of Appeals.
DISCUSSION
The first basis the court reviews for the ZBA denying the plaintiffs appeal is on the issue of preclusion.
The issue of preclusion falls within the ambit of the doctrine of municipal estoppel. In Dornfried v. October Twenty-Four, Inc.,230 Conn. 622 (1994), our Supreme Court set forth the definition and standard for the doctrine of municipal estoppel as follows:
 The law of equitable estoppel as applied to municipalities in the enforcement of zoning laws is well established. "In Zoning Commission v. Lescynski, 188 Conn. 724, 731-32, 453 A.2d 1144 (1982), we held that, in special circumstances, a municipality may be estopped from enforcing its zoning regulations. We recognized that, [in general,] estoppel always requires "proof of two essential elements: the party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and the other party must change its position in reliance on those facts, thereby incurring CT Page 11164 some injury. Bozzi v. Bozzi, 177 Conn. 232, 242, 413 A.2d 834 (1979); Dupuis v. Submarine Base Credit Union, Inc., 170 Conn. 344, 353, 365 A.2d 1093
(1976); Pet Car Products, Inc. v. Barnett, 150 Conn. 42, 53-54, 184 A.2d 797 (1962).'" West Hartford v. Rechel, 190 Conn. 114, 121, 459 A.2d 1015 (1983). We further stated that "[a]lthough estoppel may not generally be invoked against a public agency in the exercise of its governmental functions; Dupuis v. Submarine Base Credit Union, Inc., supra, 353; Bianco v. Darien, 157 Conn. 548, 556, 254 A.2d 898 (1969); State v. Stonybrook, Inc., 149 Conn. 492, 501, 181 A.2d 601, cert. Denied, 371 U.S. 185, 83 S.Ct. 265, 9 L.Ed.2d 227 (1962); 6 McQuillin, Municipal Corporations (3d Ed. Rev.) § 20.13; 8A McQuillin, supra §§ 25.349, 25.358; an exception is made where the party claiming estoppel would be subjected to a substantial loss if the municipality were permitted to negate the acts of its agents. Dupuis v. Submarine Base Credit Union, Inc., supra, 354; see 6 McQuillin, supra, [§ 20.13]; 9 McQuillin, supra, § 27.56. [Accordingly, we stated that estoppel] against municipalities is . . . limited and may be invoked against the enforcement of zoning regulations (1) only with great caution, (2) only when the resulting violation has been unjustifiably induced by an agent having authority in such matters, and (3) only when special circumstances make it highly inequitable or oppressive to enforce the regulations. Dupuis v. Submarine Base Credit Union, Inc., supra, 354." (emphasis added.) Zoning Commission v. Lescynski, supra, 731-32; see also Gelinas v. West Hartford, 225 Conn. 575, 590, 626 A.2d 259 (1993); T. Tondro, Connecticut Land Use Regulation, (2d Ed. 1992) PP. 586-88.
Id., 634-635.
This court is persuaded in this action by two cases cited by the defendant.
The first case is that of Polatnik v. Westbrook Zoning Board, Superior Court, Judicial District of Middlesex, at Middletown, Docket No. 84267 (October 12, 1999, Mullarkey, J.). In that case, the Westbrook ZBA overruled the decision of the ZEO, who issued a certificate of occupancy CT Page 11165 for the plaintiffs home.
Judge Mullarkey' s initial analysis consisted of a review of General Statutes § 8-3 (f) which states:
 No building permit or certificate of occupancy shall be issued for a building, use or structure subject to the zoning regulations of a municipality without certification in writing by the official charged with the enforcement of such regulations that such building, use or structure is in conformity with such regulations or is a valid nonconforming use under such regulations.
Judge Mullarkey concluded that an appeal of the issuance of certificate of occupancy is a limited one. Judge Mullarkey quoted from the second decision this court finds persuasive on this issue, that is the case ofSakon v. Town of Plainville Zoning, Superior Court, Judicial District of Hartford-New Britain at New Britain, Docket No. 4371878 (July 2, 1989,Berger, J.):
 "General Statutes Sec. 8-3 (f) requires that a certificate of zoning conformity be issued to determine that such building use or structure is in conformity with such regulations. . . . A certificate of occupancy is often issued by the zoning enforcement officer and sometimes it is used for both purposes. See generally, Anderson, American Law or Zoning, 3rd Ed., Secs. 19.02 and 19.03. Once issued by a zoning officer it becomes reviewable by the zoning board of appeals pursuant to General Statutes Sec. 8-6 (1), with statutory aggrievement allowed. This court can see the merit of allowing this type of appeal if there are some allegations and some proof that the building, use or structure as completed is at variance, from a zoning standpoint, with the initial zoning permit. In other words, the appeal is taken to the board because the actual construction goes beyond the permit and violates bulk or set back requirements, or the use is not in conformance with the permitted use. Such allegations and proof would serve to separate the meritorious appeal from the spurious appeal. Without such a requirement, an abutter can sit back and take an appeal, as has been done in this case, after watching the building be CT Page 11166 constructed causing financial damage." (Internal quotation marks omitted.) Sakon v. Town of Plainville Zoning, Superior Court, judicial district of Hartford-New Britain at New Britain, Docket No. 437187 (July 2, 1992) (Berger, J.).
This court concurs with this analysis in this case. Absent a finding by the ZBA that the Langer's home failed to comply with the building and zoning requirements of the Town of Barkhamsted, then there is no basis to overrule the ZEO's decision to issue the certificate of occupancy to the Langers. This court has found no evidence in the record to show that the ZEO's actions were improper.
The Polatnik case then analyzes the issue of municipal estoppel. The court cited the following:
 "[I]n order for a court to invoke municipal estoppel, the aggrieved party must establish that: (1) an authorized agent of the municipality had done or said something calculated or intended to induce the party to believe that certain facts existed and to act on that belief; (2) the party had exercised due diligence to ascertain the truth and not only lacked knowledge of the true state of things, but also had no convenient means of acquiring that knowledge; (3) the party had changed its position in reliance on those facts; and (4) the part would be subjected to a substantial loss if the municipality were permitted to negate the acts of its agents." Bauer v. Waste Management of Connecticut, 234 Conn. 221, 247 A.2d 1179
(1995).
In this case, it would be inequitable to overrule the issuance of the certificate of occupancy. If that were to occur the Langers would suffer a substantial loss. The effect would be that their home would have to be torn down. That result would be unfair after the Langers relied, to their detriment, on the fact that the building permit had been issued by the ZEO allowing the construction of their home. The Langers incurred the expense of building their home based on their reliance upon a building permit having been obtained. They built their home in conformance with the building permit requirements and obtained a certificate of occupancy which indicated that they had complied with all zoning requirements. Any result that would overrule the issuance of the certificate of occupancy to the Langers would fly in the face of all equitable principles. CT Page 11167
Furthermore, overruling the issuance of the certificate of occupancy would result in the plaintiff, Longmoor, sitting back and taking the appeal, "after watching the building be constructed causing financial damage," which result Judge Berger in Sakon found to be not permissible.
This court therefore concludes that the ZBA's decision on the issue of preclusion is upheld. This court finds that if the ZBE had overruled the issuance of the certificate of occupancy, its action would have been subject to the doctrine of municipal estoppel and that action would not have been upheld. All equities weigh in favor of the ZBA's decision and the Langers.
In view of the conclusions reached by the court on the preclusion issue, the court finds it unnecessary to reach the other two reasons the ZBA cited to overrule the plaintiffs appeal.
Accordingly, the appeal is dismissed.
Agati, J.