## CITY OF BRIDGEPORT *v.* C. R. KLEWIN NORTHEAST, LLC, ET AL.

Superior Court, Complex Litigation Docket, Judicial District of Waterbury
File No. X06-CV-04-4000308-S

Memorandum filed June 18, 2007

 

*Ronald J. Pacacha*, for the plaintiff.

*Timothy T. Corey* and *Daniel J. Klau*, for the defendants.

STEVENS, J.

### STATEMENT OF THE CASE

This action was instituted by the plaintiff, the city of Bridgeport (city), against the defendants, C. R. Klewin Northeast, LLC (Klewin), and its affiliates: Klewin Building Company, Inc., C. R. Klewin, Inc., and E & F Walsh Building Company. The case emanates from a construction management contract entered into between the city and Klewin regarding the construction of the city's minor league baseball stadium. The city is seeking a declaration that the construction management agreement is void ab initio because it was procured by Klewin's agent through bribery and corruption.[1] More specifically, the second count of the complaint seeks declaratory and injunctive relief: a declaration that the

---

[1] The complaint alleges that Klewin retained a marketing firm, Harbor Communications, Inc., to facilitate Klewin's selection as the construction manager for the ballpark project. Harbor Communications, Inc., was owned and controlled by Leonard Grimaldi. Grimaldi, the city's mayor, Joseph Ganim, and another individual, Paul Pinto, were "involved in a criminal enterprise and conspiracy" involving bribery, extortion and unlawful steering of municipal contracts. The complaint further alleges that as part of the conspiracy, the ballpark management agreement was steered to Klewin, and some of the payments made by Klewin to Harbor Communications, Inc., were filtered to Ganim. Ganim, Grimaldi and Pinto were convicted of violating federal criminal statutes.

contract is void ab initio "whether or not Klewin directly participated in or was aware of the illegal scheme"; and injunctive relief mandating that Klewin "reimburse and provide full restitution" to the city of all revenues paid to Klewin under the agreement. Under the fourth count, the city seeks restitution under the equitable principle "money had and received." In the sixth count, the city claims that Klewin violated the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., and seeks restitution or actual damages, punitive damages and attorney's fees.[2]

In their answer to the complaint, the defendants assert five special defenses of which only three remain in issue. See footnote 2. In the first special defense, the defendants assert that counts two and four of the complaint are barred by the three year statute of limitations under General Statutes § 52-577.[3] In the third special defense, the defendants assert a defense of laches as to all the counts. In the fifth special defense, the defendants assert a defense of "estoppel and/or ratification as the [c]ity accepted the benefits of the [agreement] and continues to use the baseball stadium."

Pending before the court is the plaintiff's motion to strike these special defenses. For the following reasons,

[2] In a decision issued in March, 2005, the court, Alander, J., granted the defendants' motion for summary judgment as to counts one, three and five of the complaint on the ground that these claims related solely to the arena and garage of the project and had been adjudicated through arbitration. See C. R. Klewin Northeast, LLC v. Bridgeport, 282 Conn. 54, 919 A.2d 1002 (2007). The defendants' second special defense (alleging the statute of limitations under CUTPA) was directed only to count five of the complaint. The defendants' fourth special defense alleges unclean hands. At oral argument, the defendants' counsel indicated that the defendants did not object to the plaintiff's motion to strike the fourth special defense and that they intended to withdraw this defense. On the basis of these representations, the court granted the motion to strike the fourth special defense. Thus, the only special defenses remaining are defenses one, three and five.

[3] General Statutes § 52-577 provides: "No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of."

the motion to strike is granted as to the first special defense and denied as to the third and fifth special defenses.

## DISCUSSION

A motion to strike challenges the legal sufficiency of a pleading, including special defenses. Practice Book § 10-39; *Krasnow* v. *Christensen*, 40 Conn. Sup. 287, 288, 492 A.2d 850 (1985) (motion to strike is proper method of challenging legal sufficiency of special defense); see generally *Homecomings Financial Network, Inc.* v. *Starbala*, 85 Conn. App. 284, 287–89, 857 A.2d 366 (2004). The motion admits well pleaded facts but does not admit any legal conclusions or the truth or accuracy of opinions stated in the pleadings. *Alarm Applications Co.* v. *Simsbury Volunteer Fire Co.*, 179 Conn. 541, 545, 427 A.2d 822 (1980). In ruling on a motion to strike, the court is limited to the facts alleged in the challenged pleadings. *King* v. *Board of Education*, 195 Conn. 90, 93, 486 A.2d 1111 (1985). The burden of alleging recognizable special defenses rests on the defendant. Cf. *McAnerney* v. *McAnerney*, 165 Conn. 277, 334 A.2d 437 (1973). As a general rule, a motion to strike a pleading in its entirety will fail if any part of the pleading is viable. See generally *Kovacs* v. *Kasper*, 41 Conn. Sup. 225, 226, 565 A.2d 18 (1989) ("[i]f a motion to strike is directed to the entire complaint, the motion must fail if any of the plaintiff's claims is legally sufficient").

The first special defense alleges that counts two and four of the complaint are barred by the three year statute of limitations in § 52-577. The motion to strike this special defense is granted. As previously described, counts two and four seek equitable relief, and the law is well established that § 52-577 applies to legal claims and does not apply to equitable claims. See *Dunham* v. *Dunham*, 204 Conn. 303, 326–27, 528 A.2d 1123 (1987),

overruled in part on other grounds by *Santopietro* v. *New Haven*, 239 Conn. 207, 213 n.8, 682 A.2d 106 (1996). For the following reasons, the motion to strike is denied in all other respects.[4]

As stated previously, the complaint alleges that the agreement between the city and Klewin was procured as a result of the illegal conduct of the city's mayor, Joseph Ganim, and for this reason, among others, the agreement violates the city's code of ethics and Connecticut public policy, and is thereby rendered void ab initio.[5] The complaint further alleges, in the alternative, that Klewin either did or did not participate in the illegal scheme, but in either event, the wrongful conduct involving the mayor rendered the agreement void. In its motion to strike, the city contends that on the basis of these allegations, the defenses of laches, estoppel and ratification are unavailable to the defendants.

"Laches consists of two elements. First, there must have been a delay that was inexcusable, and, second,

---

[4] After oral argument, the court granted the motion to strike the third special defense, alleging a laches defense, to the extent that it was directed to count six of the complaint claiming a violation of CUTPA. For the same reasons explained previously, that order is vacated as improvidently issued. The time period within which suit must be filed under CUTPA is governed by that statute's three year limitation period. General Statutes § 42-110g (f). The Appellate Court has held that this limitation period is jurisdictional, precluding relief under this statute if this limitation period has passed. See *Avon Meadow Condominium Assn., Inc.* v. *Bank of Boston Connecticut*, 50 Conn. App. 688, 699–700, 719 A.2d 66, cert. denied, 247 Conn. 946, 723 A.2d 320 (1998). However, a court of equity "has discretion to dismiss for laches an action initiated within the period of [limitation]." *Dunham* v. *Dunham*, supra, 204 Conn. 326.

[5] More specifically, the complaint alleges that the city's code of ethics prohibits city officials or employees from using their positions "to secure or to grant special consideration, treatment, advantage, privilege or exemption to [themselves] or any person beyond that which is available to every other person." The code also states that "public office must not be used for personal gain." The code further mandates that "any and all contracts, agreements, undertakings, commitment, purchases and obligations made, entered into, procured or agreed to in violation of this Chapter shall be null and void."

that delay must have prejudiced the defendant. *Kurzatkowski* v. *Kurzatkowski*, 142 Conn. 680, 685, 116 A.2d 906 (1955) . . . . The mere lapse of time does not constitute laches . . . ." (Citations omitted; internal quotation marks omitted.) *Bozzi* v. *Bozzi*, 177 Conn. 232, 239, 413 A.2d 834 (1979).

The doctrine of municipal estoppel has been described as follows. "There are two essential elements to an estoppel—the party must do or say something that is intended or calculated to induce another to believe in the existence of certain facts and to act upon that belief; and the other party, influenced thereby, must actually change his position or do some act to his injury which he otherwise would not have done. . . . In addition, estoppel against a public agency is limited and may be invoked: (1) only with great caution; (2) only when the action in question has been induced by an agent having authority in such matters; and (3) only when special circumstances make it highly inequitable or oppressive not to estop the agency. . . . As noted, this exception applies where the party claiming estoppel would be subjected to substantial loss if the public agency were permitted to negate the acts of its agents. (Citation omitted; internal quotation marks omitted.) *Fadner* v. *Commissioner of Revenue Services*, 281 Conn. 719, 726, 917 A.2d 540 (2007).

The defendants' special defenses also make a general claim of ratification. "Ratification is defined as the affirmance by a person of a prior act which did not bind him but which was done or professedly done on his account. . . . Ratification requires acceptance of the results of the act with an intent to ratify, and with full knowledge of all the material circumstances." (Citation omitted; internal quotation marks omitted.) *Botticello* v. *Stefanovicz*, 177 Conn. 22, 28, 411 A.2d 16 (1979).

The thrust of the city's argument in support of its motion to strike is that equitable defenses, such as

laches, estoppel and ratification, are unavailable because this action, although equitable in nature, seeks to enforce city ordinances. See generally *State* v. *Stonybrook, Inc.*, 149 Conn. 492, 181 A.2d 601, cert. denied, 371 U.S. 185, 83 S. Ct. 265, 9 L. Ed. 2d 227 (1962). The city asserts this position, in conjunction with its argument that it is entitled to equitable relief without having to "prove any tortious conduct or wrongdoing by Klewin, because the ethics ordinance focuses on the conduct of the city official rather than the contractor." In evaluating this motion to strike, the court must assume the truth of the complaint's allegation that the city official executing the construction agreement did so with illegal conflicts that made the contract "void" according to city ordinance. In this context, the city's motion presents a question of first impression: whether an innocent contractor can assert equitable defenses in an action by the municipality demanding that the contractor disgorge all payments received under such a tainted, municipal contract.

The city's position answering this question in the affirmative would effectively mean that anyone contracting with the city proceeds at its peril because any municipal contractor, who is innocent and unaware of any wrongful conduct, may have its contract voided and its contract payments disgorged if a city official executes the contract with illegal or corrupt conflicts of interest in violation of city ordinances. It is not the court's role to pass on the wisdom of this broad proposition advanced by the city or its effect (either positive or negative) on municipal contracting in the city of Bridgeport. The court only considers the city's policy in the context of the issues raised as part of this motion to strike. As applied here, the city's position that a contractor, who may be innocent and unknowing of any wrongful conduct of a contracting official, may be exposed to an action seeking to have its contract voided

and its payments disgorged without resort to any applicable equitable defenses, is a draconian position that a court, in the exercise of its equitable jurisdiction, cannot accept.

In its argument that laches cannot be asserted by the defendants, the city relies on zoning cases holding that laches cannot be applied against a municipality in the enforcement of its zoning regulations. See, e.g., *Bianco* v. *Darien*, 157 Conn. 548, 556, 254 A.2d 898 (1969); *State* v. *Stonybrook, Inc.*, supra, 149 Conn. 501. This case law addresses in the specific context of zoning the more general rule that mere delay in filing suit to compel compliance with municipal regulations will not constitute laches. See *State* v. *Stonybrook, Inc.*, supra, 501.

Similarly, a general rule is that estoppel and ratification will not ordinarily be applied to prevent a municipality from exercising its police power or acting in matters involving its governmental functions. See generally *Hebb* v. *Zoning Board of Appeals*, 150 Conn. 539, 542, 192 A.2d 206 (1963).

The city also relies on well established maxims that a municipality cannot be estopped by the unauthorized act of its officers and that knowledge of the law must be presumed. Id. On the basis of these principles, the city argues that Klewin is charged with knowing the provisions of the city's ordinances. These ordinances prohibited the mayor from executing the parties' agreement while under the influence of the corrupt conflicts of interest, and the ordinances rendered the agreement void as a result of such conflicts of interests.

A court of equity, however, cannot blindly apply these principles in a vacuum, without reference to the specific facts at issue. The city is not alleging illegality as a "defense" to a contract claim, but is asserting it as a "sword" to void a contract. The city correctly notes the general rule that a municipal contractor may be charged

with knowing the city's ordinances. However, the city does not contend, and certainly could not maintain, that every contractor doing business with the city knows, or should be charged with knowing, that the city's contracting official is engaged in corrupt, illegal activities.

Furthermore, the city is seeking to apply its police power beyond the mere enforcement of typical government functions, such as taxation or zoning. The city is seeking to enforce its regulatory authority in matters of a proprietary nature involving a construction contract, and is doing so in an effort not to rescind the contract, but to declare it void and have all city payments made under it disgorged. See generally *Bridgeport Brass Co.* v. *Drew*, 102 Conn. 206, 215–16, 218, 128 A. 413 (1925) (noting distinction in applying ratification and estoppel principles to municipality's actions involving contract or business transactions as compared to matters that are "purely governmental").[6]

Although estoppel against a municipality should be used with great caution, the rule against its application is not absolute. Estoppel will be applied against the government when actions are induced by an agent having general authority and when the party claiming estoppel "would be subjected to substantial loss if the public agency were permitted to negate the acts of its agents." *Kimberly-Clark Corp.* v. *Dubno*, 204 Conn. 137, 148, 527 A.2d 679 (1987).

In response, the city emphasizes that the application of the municipal estoppel rule ordinarily requires that

---

[6] "A municipal corporation acting in a corporate or proprietary capacity, as distinguished from a governmental capacity, may be estopped by the authorized representations and conduct of its officers and agents the same as any other corporation. It may be estopped in the exercise of its contractual powers. A city having received the benefit of the services rendered by a party under the terms of a contract it may not, any more than an individual, enrich itself through misrepresentations." 21 N.Y. Jur., Estoppel, Ratification, and Waiver § 79.

the public official must have been acting in "good faith," with appropriate authority, and the city asserts that its mayor was acting in bad faith and under corrupt influences. Consequently, according to the city's argument, the mayor was without authority under the city ordinances to execute the agreement, and the city cannot be estopped to reject the contracts that represent the fruits of his conduct.

Nevertheless, even under these circumstances, the mayor at least had the apparent authority to execute the agreement, and under the complaint's alternative claim at issue, the defendants acted without knowledge of any wrongdoing. When the contract was signed, the mayor was presented as the proper person to sign it, and the baseball stadium was not beyond the city's authority to construct.

When the contract is one that the municipality had power to make, it is possible for a court to hold that the municipality has, by taking the benefit of the contract, ratified it, or estopped itself from claiming that it was not executed according to law. *Bridgeport Brass Co.* v. *Drew*, supra, 102 Conn. 215.

In short, despite the city's view to the contrary, the mayor was the agent then clothed with at least the apparent authority to sign the contract, and under these specific circumstances, any other construction would too narrowly circumscribe the application of the estoppel doctrine. See generally *West Hartford* v. *Rechel*, 190 Conn. 114, 122, 459 A.2d 1015 (1983).

In summary, the court's limited holding applied to these specific facts is as follows. Even when the contracting official is without actual authority to execute the contract, a municipal contractor defending claims that it disgorge contract payments made by a municipality, as alleged here, may have resort to equitable defenses, such as laches, estoppel and ratification

when: the contracting official has apparent authority to execute the contract; the subject of the contract is one that the municipality could lawfully make and perform; the contractor does not know about and does not participate in any illegal or wrongful activities that operate to negate the contracting official's actual authority; and the municipality accepts and retains the benefit of the contractor's performance under the contract. Whether the defendants can meet their burden of proving these equitable defenses is not now before the court and will be determined at the trial of this matter.[7]

## CONCLUSION

As to the pending special defenses one, three and five, the plaintiff's motion to strike the defendants' first special defense is granted, and the motion to strike the defendants' third and fifth special defenses is denied.

---

[7] Because the motion to strike is directed to the special defenses in their entirety and is denied for the reasons discussed; see generally *Kovacs* v. *Kasper*, supra, 41 Conn. Sup. 226 ("[i]f a motion to strike is directed to the entire complaint, the motion must fail if any of the plaintiff's claims is legally sufficient"); the court does not reach or address the alternate claim of the complaint that would involve consideration of whether such equitable defenses would be available to a contractor who knew about and participated in the illegal activities that undermined the contracting official's actual authority and good faith.